## UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:                                        :

RONALD W. GRIGG,                              :        Bankruptcy No. 11-71206-JAD
                                              :
                    Debtor,                   :        Chapter 7
_____        X
BLAINE JOHN CHANEY,                           :        Adv. No. 12-7008-JAD
                                              :
                    Plaintiff,                :        Doc. Nos. 121, 122 and 208
v.                                            :
                                              :
RONALD W. GRIGG,                              :
                                              :
                    Defendant.                :
_____        X
RONALD W. GRIGG,                              :
                                              :
                    Counter-Claimant,         :
                                              :
v.                                            :
                                              :
BLAINE JOHN CHANEY,                           :
                                              :
                    Counter-Defendant.  :
_____        X

## MEMORANDUM OPINION

The matters before the Court are the *Motion for Summary Judgment on Chaney's*

*Complaint* and the *Motion for Summary Judgment, in the Alternative, for Partial Summary*

*Judgment of Defendant/Counter-Claimant, Ronald Grigg's Counterclaims* filed by Plaintiff

Blaine John Chaney and the *Motion for Summary Judgment* filed by Defendant Ronald W.

Grigg. Plaintiff Blaine John Chaney seeks to have a judgment debt owed by the Debtor

and related attorneys fees and costs declared nondischargeable pursuant to 11 U.S.C.

§523(a)(4). The Debtor counterclaims seeking vacatur of prepetition state court orders,

violation of the automatic stay and turnover of property. The Court has subject matter

00010430.WPD

jurisdiction over these matters pursuant to 28 U.S.C. §1334. The matters are core proceedings pursuant to 28 U.S.C. §§157(b)(1) and (b)(2)(I). For the reasons expressed below, the *Motion for Summary Judgment on Chaney's Complaint* and the *Motion for Summary Judgment on the Counterclaims* filed by the Plaintiff shall be granted and the *Motion for Summary Judgment* filed by the Defendant Ronald W. Grigg shall be denied.

### I.

It has now been approximately seven years since this dispute formally commenced. The facts and procedural history are more fully set forth in this Court's opinion of October 19, 2012 denying the *Motion for Relief Under Cal. Code Civ. Proc. Section 1008 Fed.R.Bankr.P. 9024/FRCP 60(b), and Cal. Code Civ. Proc. Section 484.100 and Related Sections* filed by Defendant Ronald W. Grigg ("Grigg"). (See Doc. #132).

This adversary proceeding seeks to have a judgment debt awarded to Plaintiff Blaine John Chaney ("Chaney") against Defendant Ronald W. Grigg ("Grigg") in the California state court declared nondischargeable pursuant to 11 U.S.C. §523(a)(4). The judgment, entered in 2010, was in the amount of approximately $3 million dollars. (See Doc. #124, Ex. 17). The judgment confirmed an arbitration award that arose in connection with the legal representation of Chaney by Grigg, an attorney licensed to practice in California, in Chaney's marital dissolution proceeding.

In connection with the marital dissolution proceedings, two separate fee agreements were entered into between Chaney and Grigg, an hourly fee agreement and a contingency fee agreement. (See Doc. #208, Ex. 1.C) Chaney and his former wife thereafter entered into a Marital Settlement Agreement (the "Agreement") regarding marital assets in January, 2006. (See Doc. #235, Ex. E). Pursuant to that Agreement, Chaney received sums for or on his behalf commencing in approximately January 2006.

(See Doc. #124, Ex. 4). Upon receipt of the funds into Grigg's Client Trust Account, Grigg

paid himself nearly $2.2 million dollars in fees. (Id.).

On September 18, 2006, Chaney commenced a lawsuit in the Superior Court of

California against Grigg disputing the fees retained by Grigg. (See Doc. #208, Ex. 1.C).

The complaint alleged various causes of action including unjust enrichment, breach of

fiduciary duty, conversion, fraud and deceit and breach of contract. Shortly after the

state court case commenced, a Writ of Attachment against the property of Grigg was

entered ex parte on September 27, 2006. (See Doc. #124, Ex. 7). Grigg moved to set

aside the Writ of Attachment and an evidentiary hearing was held, presided over by

Commissioner Victor Greenburg. The motion to set aside the writ was denied by ruling

entered January 17, 2007. (See Doc. #124, Ex. 8).

Prior to filing the motion to set aside the Writ of Attachment, Grigg filed a motion

to compel arbitration and stay litigation on October 6, 2006. The motion was granted by

order dated November 9, 2006 and the matter proceeded to arbitration. (See Doc. #124,

Ex. 6). In the Revised Interim Award of Arbitrator, the arbitrator found the contingent

fee "so exorbitant and wholly disproportionate to the services performed as to shock the

conscience of those to whose attention it was called." (See Doc. #125, Ex. 5, p. 21). The

Final Arbitration Award, issued on November 20, 2008, awarded Chaney a judgment of

$2,389,969.31 plus prejudgment interest of $426,988.004 and daily interest. (See Doc.

#124, Ex. 15). Chaney filed a petition to confirm the arbitration award in the Superior

Court of California and Grigg filed a petition to vacate the award. The judgment was

confirmed in the amount of $3,030,085.45 on March 15, 2010 and Grigg's petition to

vacate was denied. (See Doc. #124, Ex. 17).

00010430.WPD                                    3

Chaney then sought and was granted a permanent injunction against Grigg on June 2, 2010. (See Doc. #124, Ex. 19). In the order granting the injunction, Grigg was ordered, in part, to turn over funds paid by and derived from funds from Chaney and to provide an accounting to Chaney of all of the assets acquired by Grigg using the funds in Grigg's Client Trust Account for the benefit of Chaney and the present whereabouts of the funds. (See Doc. #124, Ex. 19).

Grigg failed to comply with the injunction order to provide information to Chaney and on September 16, 2011 was found to be guilty of contempt of court. (See Doc. #124, Ex. 21). In an order of court dated October 25, 2011, the determination of Grigg's contempt was memorialized. The order also provided that Grigg waived sentencing until December 7, 2011 and was ordered to appear on that date. (See Doc. #124, Ex. 21). On December 5, 2011 Grigg filed his Chapter 7 petition. (See Case No. 11-71206, Doc. #1). The sentencing hearing commenced on December 7, 2011 and was continued to January 9, 2012. Grigg was sentenced to three days in jail and a fine of $1,000. (See Doc. #124, Ex. 25).

After the filing of his bankruptcy petition, Grigg filed a *Petition for, In the Alternative, Writ of Prohibition, Habeas Corpus, Certiorari, Mandamus or Other Relief* contesting the permanent injunction, the continuation of the contempt proceedings and Grigg's sentence of imprisonment. (See Doc. #124, Ex. 30). The *Petition* was summarily denied without analysis by the Court of Appeal of the State of California on July 19, 2012. (See Doc. #124, Ex. 29).

On April 17, 2012, Chaney filed the subject adversary complaint seeking nondischargeability of the California judgment based upon 11 U.S.C. §523(a)(4). (See Doc. #1). Grigg filed counterclaims seeking: (1) the vacatur of orders obtained in the

California courts for alleged violation of California Code of Civil Procedure §1008; (2)

damages for violation of the automatic stay of 11 U.S.C. §362; and (3) a demand for

turnover/accounting from Chaney pursuant to 11 U.S.C. §542. (See Doc. #73).

## II.

A motion for summary judgment is governed by Federal Rule of Civil Procedure 56

which provides, in relevant part, that summary judgment shall be granted "if the movant

shows that there is no genuine dispute as to any material fact and the movant is entitled

to judgment as a matter of law." Fed.R.Civ.P. 56(a)(made applicable in bankruptcy by

Fed.R.Bankr.P. 7056). In considering a motion for summary judgment, the Court need

only consider those materials cited, but may consider other materials in the record.

Fed.R.CivP. 56(c)(3). A fact is "material" if proof of its existence or nonexistence might

affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

(1986). A dispute of material fact is "genuine" if a reasonable jury could return a verdict

for the nonmoving party. Id. Upon the moving party meeting its burden, the burden

shifts to the non-moving party who must "do more than simply show that there is some

metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith

Radio Corp., 475 U.S. 574, 586 (1986).

Section 523(a)(4) of the Bankruptcy Code provides that a discharge does not

discharge an individual from a debt that is from fraud or defalcation while acting in a

fiduciary capacity, embezzlement or larceny. To prove that a debt is nondischargeable

pursuant to 11 U.S.C. §523(a)(4) as a result of defalcation, as alleged by Chaney, a

creditor must show that: 1) a pre-existing fiduciary relationship existed between the

debtor and the creditor; (2) the debtor acted in violation of that relationship; and (3) the

creditor suffered an economic loss as a consequence. See e.g., Pa. Lawyers Fund for

Client Sec. v. Baillie (In re Baillie), 368 B.R. 458 (Bankr. W.D. Pa. 2007) citing

Commonwealth Land Title Co. v. Blaszak (n re Blaszak), 397 F.3d 389, 390 (6th Cir.

2005); see also Rose v. Davis (In re Davis), 476 B.R. 191 (Bankr. W.D. Pa. 2012).

Defalcation occurs for purposes of 11 U.S.C. §523(a)(4) when a fiduciary misappropriates

or fails to account for money or property that is held for another.  See Baillie, 368 B.R.

at 469.  The scope of the term fiduciary capacity  is a question of federal law, but state

law is examined to determine whether a fiduciary obligation exists.  See In re Kohler, 255

B.R. 666 (Bankr. E.D. Pa. 2000)(citations omitted).   The existence of an express or

technical trust must be shown that was imposed prior to the wrongdoing.  Id.

It is the burden of the creditor to prove the above requirements by the

preponderance of the evidence.  Grogan v. Garner, 498 U.S. 279, 291 (1991).

### III.

In the *Motion for Summary Judgment on Chaney's Complaint* filed by Chaney, it is

asserted that all of the elements of nondischargeability pursuant to 11 U.S.C. §523(a)(4)

can be shown regarding the judgment debt owed by Grigg to Chaney by a preponderance

of the evidence.  Specifically, Chaney contends that there are no genuine issues of

material fact that: the arbitrator found that the contingency fee, pursuant to which Grigg

paid himself $2.2 million dollars, unconscionable;  Grigg willfully failed to segregate the

disputed fees into a trust account until the dispute was resolved in violation of his

fiduciary duty required by California Rules of Professional Conduct, Rule 4-100(A); the

permanent injunction was entered against Grigg; and Grigg was found in contempt for

failing to provide the ordered accounting; and because Grigg has not paid over the fees,

Chaney has been deprived of money rightfully belonging to him.  Based on these facts,

Chaney argues that the debt owed by Grigg is nondischargeable due to defalcation.

00010430.WPD

Grigg opposes the entry of summary judgment[1] on Chaney's complaint on the grounds that Chaney's complaint relies upon statements made in the Writ of Attachment proceeding which were not adopted by the arbitrator in the final arbitration award. That is, the arbitrator did not find that Grigg breached his fiduciary duty to Chaney. Absent a finding of breach of fiduciary duty, Grigg argues, there can be no defalcation.[2] It is additionally argued that the imposition of sentencing regarding the contempt proceeding was in violation of the automatic stay of 11 U.S.C. §362.

As to the first element, there can be no dispute that as Chaney's lawyer, Grigg stood in a fiduciary relationship to Chaney. An attorney owes a fiduciary duty to his client at common law. Baillie, 368 B.R. at 471 (citing Maritrans GP Inc. v. Pepper, Hamilton & Scheetz, 602 A.2d 1277, 1283 (Pa. 1992)("At common law, an attorney owes a fiduciary duty to his client; such duty demands undivided loyalty and prohibits the attorney from engaging in conflicts of interest…")). The attorney-client relationship "has long been understood to be a fiduciary relationship within the meaning of the defalcation exception." The Andy Warhol Found. for Visual Arts, Inc. v. Hayes (In re Hayes), 183 F.3d 162, 168 (2d Cir. 1999). Not all debts arising from an attorney-client relationship will be nondischargeable. Nondischargeability based on the fiduciary relationship is usually reserved for situations in which an attorney/debtor has been entrusted with funds or property. See ColeMichael Investments, L.L.C. v. Burke, 436 B.R. 53 (N.D. Ill.

---

[1] Grigg's *Motion for Summary Judgment* asserts virtually the same arguments as his opposition to Chaney's summary judgment motion.

[2] Grigg also argues that material disputed facts exist based on his contentions surrounding matters that occurred in the state court proceedings. As these matters have been ruled on previously - and repeatedly - the Court declines the invitation to consider them again. See e.g., Doc. ##124, Ex. 1; 132; 270.

2010).   A debt arising out of the mishandling of those funds or property may be nondischargeable pursuant to 11 U.S.C. §523(a)(4).

It is the second prong, whether the debtor acted in violation of his fiduciary duty, that is the focus here.  The Supreme Court case of Bullock v. BankChampaign, N.A., 133 S. Ct. 1754 (2013), has recently been decided and sets forth the relevant test for determining the requisite level of intent for a debt to be nondischargeable pursuant to 11 U.S.C. §523(a)(4) for "fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny".[3]

In Bullock, the debtor was found by a state court to have breached his fiduciary duty while acting as trustee of his father's trust.  The debtor borrowed funds from the trust but had repaid the funds.  Nevertheless, it was found that the debtor had breached his fiduciary duty and was ordered to repay the benefits that he received from those breaches.  Unable to comply with the repayment order, the debtor filed bankruptcy.  The debtor's brothers brought an action seeking nondischargeability.  Despite that there was no finding of ill intent, the debt was determined to be nondischargeable by the bankruptcy court.  The nondischargeability determination was affirmed by the district and circuit court on appeal.

---

[3] Although this Court heard oral argument regarding the various motions for summary judgment prior to the entry of the Bullock decision, it was determined that since the issue of 11 U.S.C. §523(a)(4) was then pending at the Supreme Court to await the decision prior to ruling in order to ensure that the appropriate law was applied to the case.  Upon the entry of the Bullock decision, the parties were then given an opportunity to file briefs.  The Court notes that neither party complied with the directives of the Order of Court regarding further briefing which limited the submissions to a brief not to exceed ten pages and not to rehash arguments previously made.  Chaney submitted affidavits while Grigg reargued matters already argued and, in so doing, applied formatting changes so as not to exceed the page limit.

After granting certiorari, the United States Supreme Court considered the scope of the term "defalcation" as used in 11 U.S.C. §523(a)(4).  It found that it includes a culpable state of mind requirement "as one involving knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior." 133 S. Ct. at 1757. The Supreme Court stated:

> Thus, where the conduct at issue does not involve bad faith, moral turpitude, other immoral conduct, the term requires an intentional wrong. We include as intentional not only conduct that the fiduciary knows is improper but also reckless conduct of the kind that the criminal law often treats as the equivalent. Thus, we include reckless conduct of the kind set forth in the Model Penal Code.  Where actual knowledge of wrongdoing is lacking, we consider conduct as equivalent of the fiduciary "consciously disregards" (or is willfully blind to) "a substantial and unjustifiable risk" that his conduct will turn out to violate a fiduciary duty.

Id. at 1759 (citations omitted).[4]

The risk "must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a *gross deviation* from the standard of conduct that a law-abiding person would observe in the actor's situation." Id. at 1760 (citing Model Penal Code §2.02(2)(c)).

Pursuant to Bullock, any defalcation on the part of Grigg would require the showing of an intentional wrong.  The undisputed facts in this case as applied to the relevant law allow the Court to make such a determination.  Despite the considerable prepetition procedural history spanning years, the relevant facts for purposes of these motions are not so complex as the parties would have the Court believe.  The documents

---

[4] In so finding, the Supreme Court remanded the matter for further proceedings if needed to apply the heightened standard.  Id. at 761.

that form the basis for the motions are primarily from previous court proceeding and are of record for those proceedings.[5]

Pursuant to the Agreement entered into between Chaney and his wife, Chaney became entitled to receive certain fees both upon the signing of the Agreement and into the future. From the sums paid for Chaney's benefit pursuant to the Agreement, Grigg claimed a fee of $3.15 million pursuant to the Contingent Fee Agreement. (See Doc. #1, ¶16). Of the $3.15 million, Grigg claimed and received approximately $2.2 million dollars. (See Doc. #124-1, ¶3). Grigg began to collect the fees as funds were received on Chaney's behalf. (See Doc. #124, Ex. 4). On September 18, 2006 Chaney filed suit against Grigg disputing Grigg's fees, and Chaney prevailed thereby rendering Grigg's conduct unlawful.

At the outset, the Court observes that the arbitrator found that the contingency fee agreement was "ostensibly to pursue trust issues, but the fee was not based upon recovery against the trusts or in settlement of trust claims. Instead it was based upon gross recovery *including* recovery in the dissolution proceedings." (See Doc. #124, Ex. 5, p. 18). The arbitrator concluded that Grigg billed Chaney "an extravagant sum supported by dubious hours" and that Grigg would get a windfall from the enforcement of the agreement. (Id. at 20). It was also determined by the arbitrator that Chaney give up his rights, if any, under the trusts which was what he hired Grigg to pursue. Such release of rights was made without his being informed of what he was ultimately receiving in

---

[5] Grigg attempts to create disputes of material facts by rearguing arguments previously made concerning the validity of the underlying judgments and orders rendered by the California state courts. This Court previously rejected the arguments. (See Doc. ##132, 271) As such, the Court does not find a genuine issue of material fact as to the validity of the underlying judgment and orders of the California state courts.

exchange. (See id. at 21). Moreover, the arbitrator found, Chaney was arguably no better off than he had been pursuant to the settlement discussions engaged in by his prior attorneys yet Grigg claimed "$3.15 million above and beyond the princely hourly fees he has also billed Chaney in a virtually uncontested proceeding." (See id.). The arbitrator concluded that the contingent fee was "so exorbitant and wholly disproportionate to the services preformed as to shock the conscience...". (See Doc.# 124, Ex. 5, p. 21).

Having received an "exorbitant and wholly disproportionate" fee, Grigg was therefore on notice that the fees were being disputed by Chaney as of at least September 18, 2006, the date of Chaney's complaint in state court.

Rule 4-100 of the Rules of Professional Conduct for the State of California provides in relevant part:

> (A) All funds received or held for the benefit of clients by a member or law firm, including advances for costs and expenses, shall be deposited in one or more identifiable bank accounts labeled "Trust Account", "Client's Funds Account" or words of similar import ... No funds belonging to the member or the law firm shall be deposited therein or otherwise commingled therewith except as follows: ...

> (2) In the case of funds belonging in part to a client and in part presently or potentially to the member or the law firm, the portion belonging to the member or law firm must be withdrawn at the earliest reasonable time after the member's interest in that portion becomes fixed. However, when the right of the member or law firm to receive a portion of trust funds is disputed by the client, the disputed portion shall not be withdrawn until the dispute is finally resolved.

Thus, pursuant to California law, once Grigg became aware of the fee dispute, he was obligated to retain the disputed funds in the client trust account until the matter was resolved.

At the hearing on the motions for summary judgment, Grigg contended that at the time of the commencement of the lawsuit by Chaney, the fees had already been in Grigg's personal possession. Accordingly, it was argued, once the fees were removed from the

client trust account and into Grigg's possession, they no longer retained trust fund status and Grigg was not obligated to convert the funds back into a trust account. In support of his postion, Grigg relies upon an Opinion of the Standing Committee of the State Bar of California, Formal Opinion 2006-171, which examines the issue of whether an attorney who has withdrawn a fee from a client trust account must return the withdrawn funds to trust status when the client disputes the fee at a later time. (See Doc. #73, Ex. BB, pp. 70-72). In this hypothetical situation, the Standing Committee opined that funds withdrawn as a fee from a client trust account in compliance with Rule 4-100(A)(2) cease to have trust account status. Accordingly, the Committee posited that no obligation exists to return the trust amounts that are later disputed by the client exists.

There is, however, a stated assumption to the conclusion of the Standing Committee: that is, that the withdrawal of the fee was proper in the first instance. The Committee notes that funds misappropriated or withdrawn before the attorney's fee became "fixed" within the scope of rule 4-100(B)(2) are funds in which the client has an ownership interest. Misappropriated funds do not lose their trust account status and rule 4-100 remains applicable to those funds in all respects.

In a written decision denying Grigg's motion to set aside the Writ of Attachment, Commissioner Greenberg of the Superior Court of California stated that Grigg "improperly calculated and transferred moneys rightfully belonging to [Chaney] under the settlement agreement." (See Doc. #124, Ex. 8, p. 11). The commissioner found that the valuation mechanism for assets, upon which the contingency fee was based, to be "unjustified and extremely suspect." (Id.) Further, it was found that Grigg transferred portions of Chaney's settlement funds to Grigg's own personal account before all of the

assets had been delivered, and before some had even been given values by the parties. The commissioner found that the fees should not have been transferred to Grigg's personal possession until money and each piece of property had been valued and transferred for Chaney's benefit. (Id. at p. 12).[6]

In addition to the presupposition of a proper fee withdrawal, a recent California case also appears to be to the contrary to Grigg's argument. In the case of Matter of Davis, 11-O-14764, 2013 WL 3293661 (Cal. Bar Ct. June 14, 2013), an attorney was found to have violated Rule 4-100(A) as a result of her unwillingness to return funds representing a disputed fee into the client trust account. In Davis, an attorney drafted an engagement letter which, contrary to the engagement letter with the clients previously in existence when the attorney was at a different firm, omitted a contingency fee

---

[6] Specifically, the Commissioner stated:

> Defendant also had plaintiff agree to payment of these fees prior to the actual distribution and valuation of all the assets assigned to plaintiff. As a result, the defendant transferred the initial monetary portions of plaintiff's settlement funds from his client trust account to his own personal accounts before all assets had been physically delivered, and in fact before some assets had even been given specific values by the parties. Defendant justifies this action by noting that plaintiff agreed to such a procedure, and argues that to leave his 'own' money in the client trust account would be improper. Further, he asserts that he accommodated defendant by transferring a portion of these funds to the defendant, although he appears to suggest he was not bound to do so. Rather than illustrate defendant's fairness, however, such a claim instead indicates defendant improperly treated these initial payments as his own. The court finds instead that defendant's contingency fees should have been transferred to his personal possession as money and each piece of property was properly valued and transferred for the benefit of his client.

(See Doc. #124, Ex. 8, p.12)

agreement.  Despite the absence of a contingency fee agreement,  the attorney withdrew fees based upon a contingent fee after a monetary settlement was reached on behalf of the clients.  After withdrawal of the fee from the client trust account, the client contested the attorney's right to the contingency fee.  The client requested that the funds be returned to the client trust account but the attorney refused and returned only a portion of the fee.

The Review Department of the State Bar Court of California found that once the attorney became aware of the fee dispute, the attorney "was obligated to *redeposit the entire disputed portion* into the CTA until the conflict was resolved." Id. at *6 (emphasis added).  Although the attorney redeposited a portion, the remainder was not restored until nine months later.  Accordingly, the attorney was found to have "willfully violated rule 4-100(A)(2)." Id. See also Matter of Fonte, No. 90-O-18297, 1994 WL 92387, *3 (Cal. Bar. Ct. Mar. 2, 1994)("if client contests fees charged or paid, the disputed funds must be placed in a trust account until the conflict is resolved."), Chang v. State Bar of California, 775 P.2d 1049, 1056 (Cal. 1989)(where attorney misappropriated funds, even if attorney's characterization of matter as "fee dispute" is accepted, rules of professional conduct forbade appropriated funds before dispute resolved.").

Similar to Davis, Grigg was made aware of Chaney's dispute regarding the fees at least by the filing of the complaint in September 2006.  Unlike Davis, however, Grigg did not and has not restored or redeposited the disputed amount of fees into a trust account. Even after restoring the funds in Davis, a willful violation of the rule was found.  Here, where the funds have yet to be restored - approximately seven years later - a willful violation can be said to have occurred.  Such willful violation would fall within the state of mind requirement of Bullock.

At a minimum, Grigg had a duty not to spend the funds once he was aware of the dispute.  The record is not well defined as to a specific date that Grigg learned of the dispute regarding fees if it was prior to the commencement of the lawsuit.[7]  Nevertheless, by Grigg's own admission, he continued to expend the very funds that were at issue.  In an exhibit produced by Grigg during the contempt proceeding in the California state litigation, Grigg summarized his expenditures of the funds.  (See Doc. #124, Ex. 23). Among those expenditures were $427,767 in professional fees in conjunction with the Chaney litigation.  Therefore, not only did Grigg fail to maintain the entrusted funds, he apparently expended them in his effort to retain them.

Chaney contends that a finding of defalcation is not dependent solely on the failure of Grigg to segregate and maintain trust funds. In addition to the withdrawal of fees by Grigg there is also the matter of the accounting in the state court proceeding.  In conjunction with a permanent injunction issued by the Superior Court of California, Grigg was ordered to produce an accounting. Specifically, the court ordered, in part, that Grigg "forthwith provide to Chaney a full and complete accounting of the use and information concerning the present whereabouts of all funds paid to Grigg by Chaney" or "made to or for the benefit of Chaney deposited, transferred or wired into Grigg's Client Trust Account or other accounts in the name of Grigg or used by Grigg." (See Doc. #124, Ex. 19, ¶¶ 6, 7). Grigg was also ordered to provide a list of addresses and phone numbers as well as account numbers of all bank accounts on which he had been a signatory. (See id., ¶10).  The court found that Grigg had knowledge of the order, and the ability to

---

[7]  Chaney contended at oral argument that inquiries were being made as to the funds as early as April or May of 2006; however, the Court does not find documentary proof of this in the record.

comply with it. (See Doc. #124, Ex. 21). Nevertheless, Grigg failed to comply with the accounting requirements and the court found that he did not intend to obey the order.[8]

Grigg's apparent steadfast refusal to timely provide the ordered accounting is further conduct showing his knowing willfulness and in failing to account for the funds.

In opposition to Chaney's *Motion for Summary Judgment*, Grigg contends that the arbitration award upon which the debt to Chaney is based was not premised on fraud, deceit, misconduct or breach of fiduciary duty. Accordingly, it is argued, that since the judgment by its own terms does not arise out of fraud, breach of fiduciary duty, misconduct or deceit, the judgment cannot be one for fraud or defalcation.

In the case of Archer v. Warner, 123 S.Ct. 1462 (2003), the Supreme Court determined that a debt arising from a settlement agreement that was accompanied by a release of underlying tort claims could amount to a nondischargeable debt for money obtained by fraud. The court relied upon its prior decision of Brown v. Felsen, 442 U.S. 127 (1979), in which it was held that claim preclusion did not prevent the bankruptcy court from looking beyond the state court records and documents to decide whether the debt was obtained by fraud. The settlement had not established whether the parties intended to resolve the issue of fraud or "more narrowly, to resolve that issue for purposes of a later claim of nondischargeability in bankruptcy." Id. at 1467. The court noted that regardless of whether the debt arose from a settlement or a consent judgment (as in Brown) or otherwise, "'Congress intended the fullest possible inquiry' to ensure that 'all debts arising out of' fraud are 'excepted from discharge' no matter what the form." Archer, 123 S.Ct at 1467 (citing Brown, 442 U.S. at 138). The Supreme Court

---

[8] Grigg finally provided some sort of accounting, to the bankruptcy trustee after the commencement of this bankruptcy case.

went on to state that Congress intended to allow the determination of whether a debt arises out of fraud to be decided in bankruptcy and "not to force it to occur earlier in state court at a time when nondischargeability concerns 'are not directly in issue and neither party has a full incentive to litigate them.'" Id. (citing Brown, 442 U.S. at 134).

The Court considers Grigg's argument against the backdrop of the Archer decision. Despite Grigg's assertions to the contrary, Chaney's Complaint and the related *Motion for Summary Judgment* are premised not only on the arbitration award but also on other related circumstances and conduct of Grigg. The complaint and summary judgment motion are not exclusively based upon the arbitration award but also assert the issues of the placement of disputed funds into a trust account, Grigg's failure to produce an accounting and the related order of contempt.

Even if Chaney had relied exclusively on the arbitration award as his basis for nondischargeability, the lack of a finding of a breach of fiduciary duty would not be preclusive under the facts of this case. Grigg's argument sounds in the nature of collateral estoppel. When determining the preclusive effect of a state court judgment, a federal court looks to the law of the adjudicating state. See In re Mauz, 496 B.R. 777 (Bankr. M.D. Pa. 2013) (citing Delaware River Port Authority v. Fraternal Order of Police, 290 F.3d 567, 573 (3d Cir. 2002)); Greenleaf v. Garlock, 174 F.3d 352 (3d Cir. 1999). Accordingly, this Court looks to the law of California where the prior state court decisions were adjudicated. Under California law, collateral estoppel requires that: (1) the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding; (2) this issue must have been actually litigated in the former proceeding; (3) this issue must have been "necessarily decided" in the former proceeding, meaning that resolution of the issue was not "entirely unnecessary to the judgment in the initial

proceeding"; (4) the decision in the former proceeding must be final and on the merits;

and (5) the party against whom preclusion is sought must be the same as, or in privity

with, the party to the former proceeding. <u>Lucido v. Superior Court</u>, 51 Cal. 3d 335,

341-42 (1990).

In the arbitration, the matter of breach of fiduciary duty was not actually litigated.

According to the interim and final awards of the arbitrator, the arbitration was bifurcated

and the matter of Grigg's claim for $3.15 million in fees pursuant to the contingency fee

agreement was first decided.  The second phase was intended to address Grigg's claim

for unpaid fees pursuant to the hourly fee agreement and Chaney's cross claims

including breach of fiduciary duty.[9]  In his final award, the arbitrator noted that he did

not decide the matter of breach of fiduciary duty in the first phase of the arbitration

because he was not asked to do so.  Specifically, the arbitrator stated:

> I did not find, because I was not requested to find, that Grigg breached his
> fiduciary duty to Chaney. I found simply that Grigg's retainer agreement
> was unconscionable as applied to the circumstances, citing B&P 4-200.
> That phase of the case having been argued and concluded, I will not further
> consider evidence presented during Phase I to find that Grigg breached a
> fiduciary duty to his client or engaged in other willful misconduct, such as
> fraud or deceit.

<u>See</u> Doc. #124, Ex. 15, p. 8.

The arbitrator then went on to find for Chaney on the grounds of unjust

enrichment. Having found in Chaney's favor, absent a finding of breach of fiduciary duty,

the issue was expressly not necessarily decided by the arbitrator.

Finally, it cannot be overlooked that Grigg has failed to pay the debt owed despite

an unsuccessful appeal of the judgment.  Rather, he has engaged in litigation now

---

[9]  Although Chaney filed the underlying lawsuit, in the arbitration proceeding
Grigg was the petitioner and Chaney was the respondent.

spanning years. Approximately seven years after the lawsuit by Chaney was first filed, and over three and a half years after the arbitration award was confirmed, the debt remains unpaid except for those sums obtained by Chaney by execution on a Merrill Lynch account.

For all of these reasons, the Court finds that Chaney has shown that Grigg was in a fiduciary capacity and that he acted in violation of his fiduciary capacity. In so doing, Grigg at a minimum consciously disregarded "a substantial and unjustifiable risk" that his conduct would turn out to violate a fiduciary duty. Accordingly, the Court finds that the state of mind required by the Bullock decision has been shown. Further, the debt owed by Grigg falls within the exception set forth in 11 U.S.C. §523(a)(4).

As a final matter of Chaney's summary judgment motion, he seeks a finding that the court ordered attorneys fees and costs awarded in conjunction with the contempt proceeding be found nondischargeable. At the time Grigg was held in contempt, there was also an order directing Grigg to pay Chaney the sums of $229,760 in attorneys fees and $3,864.07 in costs. Chaney asserts that these sums are nondischargeable since they are ancillary to the judgment in favor of Chaney. In addition, Chaney was awarded sanctions and costs against Grigg in the total sum of $13,358.23. As set forth in Chaney's Proof of Claim No. 7, sanctions were entered: on April 6, 2011 in the amount of $10,070 resulting from a motion to compel discovery responses; on June 1, 2011 in the amount of $2,500 from a denial of a motion for reconsideration filed by Grigg; and on October 18, 2011 in the amount of $818.23 for costs arising from Grigg's appeal of the judgment and permanent injunction.[10]

---

[10] Chaney filed three separate proofs of claim in this case, Claim Nos. 5, 6 and 7. Proof of Claim No. 5 was for the monetary judgment awarded and Claim No. 6 was

(continued...)

Grigg opposes the attorneys fees being treated as nondischargeable for the same reason that he contends that the underlying judgment should not be found nondischargeable - that the judgment was not based upon a breach of fiduciary duty, fraud or deceit, or the like and therefore there can be no finding of defalcation. Three theories have emerged over time to determine whether a debt to pay court awarded attorneys fees should be nondischargeable. First is a statutory/contractual basis which states that fees should be nondischargeable only where the order awarding fees is based upon a contractual or statutory provision. Second is a line of cases following the "status dependent" theory which finds that the dischargeability of ancillary obligations such as attorneys fees turns on the dischargeability of the underlying debt. And third, is the "support context" doctrine which holds that fees awarded in connection with divorce and separation are nondischargeable. See In re Weinstein, 173 B.R. 258, 270-273 (Bankr. E.D.N.Y. 1994); In re Beale, 253 B.R. 644, 651 (Bankr. D. Md. 2000).

In the present case, the status of the underlying judgment determines whether the ancillary obligations of attorneys fees, costs and sanctions are dischargeable. To support a finding of nondischargeability under this theory, the attorney fees must be incurred in connection with a nondischargeable debt. See In re Millman, No. 02-16784DWS, 2003 WL 716289, *3 (Bankr. E.D. Pa. Feb. 3, 2003).

---

[10](...continued)
for the attorneys fees and costs totaling $233,624.07 as more fully set forth in the Complaint. Claim No. 7 sets forth additional amounts for sanctions and costs awarded. Pursuant to Grigg's Objections to the Proofs of Claim and Motion to Consolidate, the claim objections with the adversary proceeding were consolidated and ordered to be adjudicated together. (See Case No. 11-71206, Doc. ##172-175, 211). The Court only references Claim No. 7 herein since the amounts sought in Claim Nos. 5 and 6 are specifically referenced in the Complaint.

There is no dispute that the attorneys fees, sanctions and costs at issue are ancillary to the judgment and were incurred in connection with the judgment. In the Motion to Consolidate the claim objections with the adversary, Grigg states that the amounts claimed in the proofs of claim which include attorneys fees, sanctions and costs arise from the same underlying judgment. Grigg has not argued that should the Court find the judgment nondischargeable, it should not follow those cases that hold ancillary obligations are dependent upon the status of the underlying debt.

Under the facts and circumstances of this case, the Court finds no reason not to hold the ancillary obligations of the Debtor consistent with the underlying judgment, i.e. nondischargeable. The Court follows those courts that have held that such obligations carry the status of the debt and where the debt is nondischargeable the ancillary obligations are likewise.  See e.g., Matter of Gober, 100 F.3d 1195 (5th Cir. 1996); Klingman v. Levinson, 831 F.2d 1292 (7th Cir. 1987); Florida v. Ticor Title Ins. Co. of Cal. (In re Florida), 164 B.R. 636 (9th Cir. 1994).

Although the statutory/contractual doctrine and support context doctrine are not applicable in the present proceeding, the policy considerations from each lend further support of nondischargeability for these obligations. In Cohen v. de la Cruz, 523 U.S. 213 (1998), a case originating from the Third Circuit, the Supreme Court found that a statutory award of treble damages was nondischargeable where the underlying debt was found to be excepted from discharge under 11 U.S.C. §523(a)(2)(A). The court found that any debt under §523(a)(2)(A) encompassed any liability that was fraudulently obtained, including treble damages, attorneys fees and other relief.  523 U.S. at 223.  Otherwise, if the exception was limited to the value of money or property obtained by the debtor, a debtor could discharge liability for losses resulting from his/her conduct in an amount

greater than that received, leaving the creditor less than whole. Id. Regarding the support context theory, this Court has previously held that attorney fees payable in connection with a child custody case were a nondischargeable support obligation. Louttit v. Armell (In re Louttit), 473 B.R. 663 (Bankr. W.D. Pa. 2012).

As in the instance of a statutory based award, the Court finds no support for failing to make Chaney whole regarding the amounts he has been awarded. But for the conduct of Grigg, the attorneys fees would not have been incurred and the sanctions and costs would not have been imposed. The ancillary obligations shall therefore also be found nondischargeable.

## IV.

As to the counterclaim filed by Grigg, Chaney contends that summary judgment should be entered denying the counterclaims. As to the all of the counts of the counterclaim, Chaney contends that this court lacks subject matter jurisdiction as a result of the *Rooker-Feldman* doctrine. Further, there are no genuine issues of material fact as to the entry of the various orders of the California courts including the judgment, permanent injunction, and contempt orders, all of which should be given preclusive effect. Specifically, as to the second count of the counterclaim alleging a violation of the automatic stay, Chaney asserts that the California court was conducting a ministerial act of entering judgment since Grigg had been found in contempt prior to the filing of the bankruptcy. In addition, it was Grigg that commenced the Writ Petition proceeding postpetition to which Chaney was ordered to respond. As to the third counterclaim of turnover, it is argued that Grigg does not have standing to pursue a turnover action as such actions must be brought by a trustee. Finally, Chaney contends that the matters raised in the counterclaim are simply attempts to relitigate the matter previously decided

in the California courts which are now final. Accordingly, Chaney contends that he is entitled to judgment as a matter of law on the counterclaims.

In response to Chaney's Motion for Summary Judgment on Grigg's Counterclaims, Grigg asserts three arguments: (1) that Chaney has failed to establish that there are no material facts in dispute; (2) that contempt proceeding were in violation of the automatic stay and a prior ruling of the California court; and (3) Chaney failed to demonstrate the non-existence of disputed, material facts.

Count I of Grigg's counterclaims seeks to have this Court vacate unspecified prior orders of the California courts. Grigg has previously on several occasions made this same argument before this Court. Grigg filed a separate motion captioned *Motion for Relief Under Cal. Code Civ. Proc. § 1008, Fed. R. Bankr. P. 9024 / FRCP 60(b), and Cal. Code Civ. Proc. § 484.100 and Related Sanctions* in this adversary proceeding (See Doc. #100). A Brief in Support of the Motion was filed as well as a responsive brief to Chaney's opposition to the motion. This Court denied the motion after hearing by Memorandum Order dated October 19, 2012. (See Doc. #132). The motion was denied on the grounds of *Rooker-Feldman* doctrine, the Full Faith and Credit Act, the preclusive doctrines of res judicata and collateral estoppel as well as the express language of the subject rule of procedure.

Grigg then filed a *Motion for Reconsideration* of this Court's Memorandum Order. A brief in support of that motion was filed as well as a reply brief to Chaney's response to the motion. The *Motion for Reconsideration* was also denied by Memorandum Opinion on September 20, 2013. (See Doc. ## 270, 271).[11] As is evident by this history, this

---

[11]   Grigg has filed yet another motion for reconsideration of the denial of the
(continued...)

Court has already addressed and analyzed the issue of vacatur of the orders of the California court and has denied Grigg's request for relief twice. It need not do so for a third time in the context of Grigg's motion for Summary Judgment. As this Court has previously held, and for the reasons stated in the prior opinions, this Court cannot vacate the orders of the California courts due to the *Rooker-Feldman* doctrine, Full Faith and Credit Act and the preclusive doctrines of res judicata and collateral estoppel.

The second count of Grigg's counterclaim alleges violation of the automatic stay regarding the postpetiton sentencing for Grigg's prepetition contempt. The record reflects that the contempt order was entered on October 25, 2011 and sentencing was set for December 7, 2011. Grigg filed his voluntary petition two days before the sentencing hearing. At the hearing held on December 7, Judge Ongkeko of the Superior Court for the State of California stated that Grigg's contempt implicated the dignity of the court and went beyond a private dispute between the parties for collection of a judgment. (See Doc. #124, Ex. 28, p.11). Accordingly, he found that the contempt proceeding fell within an exception to the automatic stay of 11 § U.S.C. §362. (Id.). Additionally, the judge stated that the ability to comply with the order had been established long before and that the matter was based on "old facts". The judge was aware of the automatic stay and found that under the circumstances of the case, it did not apply to prohibit the sentencing of Grigg. Further, he stated that sentencing would go forward unless enjoined by a higher court and that it was up to Grigg to delay or stay the sentencing. (See id. at 20-21).

---

[11](...continued)
original motion for reconsideration which is currently pending. (See Doc. # 275).

Grigg did not seek a delay or stay from this Court or, to this Court's knowledge, any other appropriate court. It was not until February 12, 2012, after Grigg had served his imprisonment and approximately two months after the bankruptcy filing, that Grigg then filed his *Petition for, In the Alternative, Writ of Prohibition, Habeus Corpus, Certiorari, Mandamus, or Other Relief* ("Writ Petition") with the Court of Appeal for the State of California. The Petition sought a determination, in part, that the trial court had no jurisdiction to sentence him for contempt while the automatic stay of the bankruptcy was in effect. By order of court dated July 17, 2012 the Writ Petition was not granted.

It was not until after the denial of Grigg's Writ Petition by the Court of Appeal that Grigg sought relief from this Court for the alleged violation of the automatic stay. Grigg first complained about an alleged violation of the automatic stay in a pleading filed in March 2012 in the main bankruptcy case in response to a motion for relief from stay filed by Chaney regarding Grigg's Writ Petition. Yet, he did not take any action in this Court to seek redress. Moreover, once Grigg did seek relief, it was not in the form of an affirmative action but rather only raised in the context of the counterclaim.

This Court concludes that the counterclaim for violation of the automatic stay is barred pursuant to principles of res judicata and collateral estoppel. Res judicata prevents the relitigation of a cause of action after it has been finally determined on the merits. When a federal court determines the preclusive effect of a state court judgment, the governing law is that of the state which rendered the state court judgment. See 28 U.S.C. §1738; Marrese v. American Academy of Orthopaedic Surgeons, 470 U.S. 373 (1985). The doctrine is applicable under California law when: (1) the issues decided in the prior action are identical to those presented in the later action; (2) there was a final judgment on the merits in the prior action; and (3) the party against whom res judicata

is asserted was a party or in privity with a party to the prior action. <u>Busick v. Workmen's Comp. Appeals Bd.</u>, 7 Cal. 3d 967, 974-75 (1972). All of the elements of res judicata regarding the alleged violation of the automatic stay that Grigg now asserts in his counterclaim have been met.[12]

As with res judicata, all of the elements of collateral estoppel have been met concerning the alleged stay violation. <u>See Lucido v. Superior Court</u>, 51 Cal. 3d 335, 341-42 (1990). The issue of the alleged violation of the stay was raised in the contempt proceeding, the issue was litigated and necessarily decided. The judge determined that

---

[12]   Grigg states that the Court of Appeal "abstained" from deciding his Petition on the merits. Grigg further presumed the basis for this purported abstention. The Court of Appeal in fact summarily <u>denied</u> the Petition. Grigg's contention that summary denials are not "final" for purposes of res judicata are unavailing. Cal. Civ. Proc. §1222 provides that judgment and orders made in contempt proceedings are final. Cal. Civ. Proc. §904.1 (A)(1)(B) provides that a judgment of contempt made pursuant to §1222 is not appealable. The manner in which a contempt order is challenged is through extraordinary writ. <u>See People v. Gonzalez</u>, 910 P.2d 1366, 1373 (Cal. 1996). Grigg relies on the case of <u>Kowis v. Howard</u>, 3 Cal.4th 888 (Cal. 1992) for the proposition that writs that are summarily denied do not have preclusive effect. Such reliance is misplaced as <u>Kowis</u> is inapplicable. <u>Kowis</u> addressed whether a writ *from a pretrial order* that was summarily denied was the law of the case. In <u>Kowis</u>, the court stated that the law of the case doctrine applies to *pretrial* writ proceedings but, in general, did not extend to summary denials of those writ petitions. (The concern at issue was that the court would not be able to consider the matter anew after the parties had an opportunity to fully brief and argue the case.) However, as the Supreme Court of California explained in a later case, <u>Leone v. Medical Bd. of Cal.</u>, 995 P.2d 191, 197 (Cal. 2000) its determination in <u>Kowis</u> (that a court does not take jurisdiction over the case when it denied a writ petition without issuing an alternative writ) was addressed to petitions challenging *pretrial* superior court rulings that could also be reviewed on appeal from the judgment that was eventually entered in the case.  The <u>Leone</u> court went on to explain that its finding "was not addressed to situations in which a writ petition was the only authorized mode of appellate review. In the latter situation, an appellate court must judge the petition on its procedural and substantive merits, and a summary denial of the petition is necessarily on the merits." <u>Id.</u> (citations omitted). The writ petition filed by Grigg was the only appellate review available under California procedure. Therefore, a summary denial by the appellate court would have been on the merits.

Grigg's sentencing was not stayed and the decision was final.  The alleged stay violation

was also denied by the California Court of Appeal.

Moreover, even if the order of contempt were not found to be final, a court other

than the bankruptcy court may determine the applicability of the automatic stay of 11

U.S.C. §362 in a case before it.  See Brock v. Morysville Body Works, Inc., 829 F.2d 383,

387 (3d Cir. 1987)("The court in which the litigation claimed to be stayed is pending thus

'has jurisdiction to determine not only its own jurisdiction but also the more precise

question whether the proceeding pending before it is subject to the automatic stay.'")

(quoting In re Baldwin-United Corp. Litigation, 765 F.2d 343, 347 (2d Cir. 1985)).  It has

been held that a state court has concurrent jurisdiction with a bankruptcy court to

decide whether the automatic stay applies.  See e.g., Siskin v. Kutner (In re Siskin), 258

B.R. 554, 562-563 (Bankr. E.D.N.Y. 2001)(majority of jurisdictions have accepted that

bankruptcy court has concurrent jurisdiction to decide applicability of automatic stay)

and cases cited therein; In re Angelo, 480 B.R. 70 (Bankr. D. Mass. 2012)(state court had

concurrent jurisdiction to decide applicability of automatic stay to contempt order); Klass

v. Klass, 831 A.2d 1067, 1071 (Md. 2003)(noting the clearly predominant rule is that

jurisdiction is concurrent and nonbankruptcy court in which case is pending may

determine effect of stay) and cases cited therein.[13] Accordingly, the California state court

---

[13] But see In re Gruntz, 202 F.3d 1074 (9th Cir. 2000)(federal courts have final
authority to determine scope and applicability of the stay).  Courts have interpreted
Gruntz to say that the applicability of the automatic stay was a core proceeding within
the exclusive jurisdiction of the federal courts.  See e.g., Siskin v. Kutner (In re
Siskin), 258 B.R. 554 (Bankr. E.D.N.Y. 2001).  Other courts have suggested it to mean
that a state court's determination of the applicability of the stay is subject to collateral
attack.  See In re Benalcazar, 283 B.R. 514 (Bankr. N.D. Ill. 2002).  Regardless of its
interpretation, this Court is not bound by the decision.

was within its jurisdiction to determine whether Grigg's sentencing for contempt was stayed pursuant to his bankruptcy filing.

Even if this Court were required to review the determination of the applicability of the automatic stay, it would annul the automatic stay.  Among the relief that a court can grant regarding relief from stay is the annulment of the stay.  11 U.S.C. §362(d); In re Siciliano, 13 F.3d 748 (3d Cir. 1994).  Section 362(d)(1) permits a court to annul the stay "for cause" shown.  When the stay is annulled, it is as if the stay never existed as to the requesting party.  See In re Siciliano,  167 B.R. 999 (Bankr. E.D. Pa. 1994) citing In re Lampkin, 116 B.R. 450, 453 (Bankr. D. Md. 1990).  In In re Myers, 491 F. 3d 120, 129 (3d Cir. 2007), the Court of Appeals for the Third Circuit recognized certain factors that courts consider in annuling the stay: (1) whether the creditor was aware of the bankruptcy filing; (2) whether the debtor engaged in inequitable, unreasonable or dishonest behavior and (3) whether the creditor would be prejudiced.  In applying those factors, a balancing of the equities test is employed.  Id.

As to the first factor, there is no dispute that Chaney was aware of the filing as it was raised and addressed by the California court prior to Grigg's sentencing.  A creditor's awareness is but one factor and does not end the analysis.  Courts have held that even where the creditor was aware of the filing, after balancing the equities of the case, annulment of the stay was appropriate.  See e.g., Sullivan v. Java Oil Ltd. (In re Sullivan), No. Civ. 5-06-20 LKK , 2006 WL 1686732 (E.D. Ca. June 20, 2006); In re Myers, 491 F.3d 120 (3d Cir. 2007).

The second factor of the debtor's conduct would weigh heavily in this instance.  Grigg failed to comply with the judgment order issued against him despite the judgment being affirmed on appeal by the Court of Appeal.  Chaney then sought and was granted

an injunction which included an order to provide an accounting.  Grigg then failed to provide the court ordered accounting.  The state court specifically found that Grigg had the ability to comply and provide the information.   The order of contempt stated that Grigg willfully violated the permanent injunction order.[14]  Two days before the sentencing hearing, Grigg filed his petition.  After being sentenced for contempt, Grigg failed to seek redress for the alleged stay violation instead choosing to serve time in prison.  After serving his sentence, Grigg sought relief from it in state court by way of a writ which was summarily denied.  Grigg did not seek redress in this Court until after denial of the writ and after Chaney brought his dischargeability complaint and only then in the form of a counterclaim.  By so doing, Grigg attempted to use the automatic stay as a sword instead of a shield.  See e.g., Wcislak v. The Northern Ohio Inv. Co. (In re Wcislak), 446 B.R. 827 (Bankr. N.D. Ohio 2011)(automatic stay intended to be used only as a shield, not a sword).  Moreover, at the time of the filing of the counterclaim on July 27, 2012, Grigg's bankruptcy had been pending for over seven months.  See e.g., In re Snyder, 293 F. App'x. 140 (3d Cir. 2008)(affirming annulment of stay where debtor waited more than ten months after sheriff sales to dispute validity of default judgments entered years earlier); In re Speights, No. 08-11543DWS, 2008 WL 2096798 (Bankr. E.D. Pa. May 15, 2008). For these reasons, the Court finds Grigg's conduct in this regard to be both inequitable and unreasonable.

---

[14]   Although not part of the injunction or contempt order thereof, other sanctions were also imposed against Grigg during the course of the litigation with Chaney.  Proof of Claim No. 7 filed by Chaney seeks compensation for sanctions and costs awarded him.  In the ruling on the motion to compel discovery, the judge noted that Grigg had "willfully failed to comply with reasonable discovery requests".  (See Proof of Claim No. 7, p. 8).

There has been no prejudice to Chaney or other creditors since Grigg and Chaney acquiesced to litigating the matter in the California court. Grigg completed his sentencing and the fine assessed of $1000 was relatively nominal. After balancing the equities, the Court finds that grounds would exist for the annulment of the stay.

To the extent that Grigg contends that the stay was violated by the filing of a response to the Writ Petition by Chaney, such argument is unavailing. The automatic stay serves to stay actions taken *against* the debtor; however, it does not serve to stay actions taken *by* the debtor. See In re Northwood Flavors, Inc., 202 B.R. 63, 66 (Bankr. W.D. Pa. 1996)("by its clear and unambiguous language, §362(a)(1) stays only proceeding **against** a debtor.") (citing Maritime Electric Co., Inc. v. United Jersey Bank, 959 F.2d 1194, 1205 (3d Cir. 1991)). The Writ Petition was commenced *by* Grigg and named Chaney as a "real party in interest". Chaney was then, as a real party interest, ordered to file a written opposition by a date certain. As such, Chaney was complying with a court order and responding to an action instituted by Grigg. Under those facts, Chaney was not in violation of the stay. See Martin-Trigona v. Champion Fed. Sav. and Loan Ass'n, 892 F.2d 575, 577 (7th Cir. 1989)(unlike the protection of the estate from creditors, there is no policy of preventing those who have been sued by the debtor from protecting their legal rights.)

Judgment must also be entered as a matter of law as to the third count of the counterclaim, turnover pursuant to 11 U.S.C. §542 for unpaid fees allegedly owed Grigg.[15] Again, this matter is precluded by res judicata and collateral estoppel. It was determined by the Final Arbitration Award that no further fees were awarded to Grigg. Specifically,

---

[15] Grigg asserts that he is entitled to additional fees as a result of the finding by Judge Munoz that the 15% Contingent Fee Agreement was valid.

the Final Award of Arbitrator states that "Petitioner Grigg's Phase 1 claim to the balance

of his contingency fee, and the right to retain that part of the contingency fee already

received is denied.  (2) Petitioner Grigg's Phase 2 claim to additional hourly fees and costs

advances is denied."  (See Doc. #124, Ex. 15, p. 9.)  Additionally, the funds Grigg refers

to, $545,459.09 in a Merrill Lynch account, were the subject of a Writ of Attachment

executed in favor of Chaney in 2010.  At the time of the bankruptcy filing in December

of 2011, Grigg did not possess an interest in those funds.  Accordingly, they were not

property of the estate subject to turnover.

Even if the matter of Grigg's claim for fees had not already been finally decided and

the monies were subject to turnover, Grigg lacks standing to pursue a turnover of estate

property.  Turnover of property of the estate pursuant to 11 U.S.C. §542 requires an

entity holding property of the estate to deliver the property to the trustee.  Generally, it

is only the trustee (or, where applicable, the debtor in possession pursuant to 11 U.S.C.

§1107) who has standing to bring a claim for turnover of bankruptcy estate property.  See

Marquez v. ADP, Inc., (In re Marquez), Adv. No. 12-1194, 2013 WL 74606 (Bankr. D. N.M.

Jan. 4, 2013) and cases cited therein.[16]

## IV.

For all of the above reasons, the Court finds that there are no genuine issues of

material facts in dispute regarding the establishment of the elements of defalcation.

Accordingly, the Court will grant the *Motion for Summary Judgment on Chaney's

Complaint.*  Similarly, the Court finds that there are no issues of genuine material fact in

---

[16]  Additionally, pursuant to Fed.R.Bankr.P. 7001(a), an action for turnover
must be brought by way of adversary proceeding.  An adversary proceeding is
commenced by way of complaint.  Here, Grigg raises the matter by way of
counterclaim.

dispute regarding Grigg's Counterclaim. Therefore, the Court will enter an order granting the *Motion for Summary Judgment, in the Alternative, for Partial Summary Adjudication of Ronald Grigg's Counterclaims* filed by Chaney and denying the *Motion for Summary Judgment Directed to Plaintiff/Counter-Defendant Blaine Chaney's Single Count Complaint Filed April 17, 2012 Seeking to Deny Discharge* filed by Grigg.

An appropriate order shall be entered.

Dated: October 23, 2013

_____
JEFFERY A. DELLER
Chief U.S. Bankruptcy Judge

case administrator to serve:

Matthew T. Yanni, Esq.
Joseph A. Yanny, Esq.
Ronald P. Carnevali, Jr., Esq.
William C. Price, Esq.
David K. Rudov, Esq.
Eric E. Bononi, Esq.
Office of the United States Trustee

**FILED**

OCT 23 2013

CLERK, U.S. BANKRUPTCY COURT
WEST DIST. OF PENNSYLVANIA