**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | **Bankruptcy No. 11-71206-JAD** |
| **RONALD W. GRIGG,** | ) | |
| | ) | **Chapter 7** |
| Debtor. | ) | |
| ———————————— | X | **Adversary No. 12-07008-JAD** |
| | ) | |
| **BLAINE JOHN CHANEY,** | ) | **Related to Dk. Nos. 341** |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| - vs - | ) | |
| | ) | |
| **RONALD W. GRIGG,** | ) | |
| | ) | |
| Defendant. | ) | |
| ———————————— | X | |
| | ) | |
| **RONALD W. GRIGG,** | ) | |
| | ) | |
| Counter-Claimant, | ) | |
| | ) | |
| - vs - | ) | |
| | ) | |
| **BLAINE JOHN CHANEY,** | ) | |
| | ) | |
| Counter-Defendant. | ) | |
| ———————————— | X | |

## <u>MEMORANDUM OPINION</u>

The matter before the Court is *Chaney's Motion for Sanctions* filed by

Plaintiff/Counter-Defendant/Movant, Blaine John Chaney ("Movant" or

"Chaney"). By this motion, Movant seeks to have the Court impose sanctions

on responding parties, Ronald W. Grigg ("Grigg"), Ronald Carnevali, Jr., Esq.

("Attorney Carnevali"), and the law firm of Spence, Custer, Saylor, Wolfe &

Rose, LLC ("Spence Custer", and together with Grigg and Attorney Carnevali,

the "Respondents"), pursuant to 28 U.S.C. §1927. As a unit of the United States District Court for the Western District of Pennsylvania (the "District Court"), and by virtue of 28 U.S.C. §157 and the standing order of reference by the District Court,[1] this Court has the authority to impose sanctions under 28 U.S.C. §1927. In re Schaeffer Salt Recovery, Inc., 542 F.3d 90, 105 (3d Cir. 2008).

The genesis of this dispute arises out of a California state court judgment rendered against Grigg and in favor of Chaney.  In this Adversary Proceeding, this Court found that Grigg's liability relating to the same is non-dischargeable.

Prior to the Court's ruling as to non-dischargeability, the Respondents aggressively attacked the California state court judgment through many collateral proceedings brought before this Court.   It is these collateral proceedings that form the basis of *Chaney's Motion for Sanctions* (the "Motion for Sanctions" or "Motion").  As Chaney averred in his Motion:

> This Motion for Sanctions arises out of proceedings, the very inception of which were based on vexatious overpleadings, and meritless claims, legal theories and arguments proffered by Grigg's attorneys...
>
> From the very beginning of the litigation before this Court, Grigg, through his attorneys, sought relief from a nondischargeable debt owed to Chaney as the result of a California state court judgment, which he had already appealed within the California state court system.  Despite this, Grigg filed papers in this Court that simply rehashed the same arguments in an attempt to seek relief through multiple Motions for Relief and then reconsiderations of those Motions for Relief.   This Court noted that "Grigg

---

[1] Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc dated Oct. 16, 1984, issued by the United States District Court for the Western District of Pennsylvania, http://www.pawd.uscourts.gov/sites/pawd/files/general-ordes/bankruptcy_standing_order.pdf.

2

attempt[ed] to create disputes of material facts by rearguing arguments previously made concerning the validity of the underlying judgments and orders rendered by the California state courts" in its October 23, 2013 Memorandum Opinion on Chaney's Motion for Summary Judgment...

<u>See</u> Motion for Sanctions 2, ECF No. 341.

The Respondents have opposed *Chaney's Motion for Sanctions* on numerous grounds, including timeliness. Specifically, the Respondents contend that Chaney unreasonably delayed in prosecuting the instant motion by waiting to file the sanctions motion until more than fifteen months after the Third Circuit Court of Appeals affirmed this Court's decision in the underlying litigation and nearly a full year after the Adversary Proceeding was closed by this Court. For the reasons set forth more fully below, the Court agrees that *Chaney's Motion for Sanctions* was not filed within a reasonable period of time and, for this reason, must be denied.

## I.

A bedrock principle of litigation in this country is that each party is responsible for payment of its own attorneys' fees, win or lose. <u>Baker Botts L.L.P. v. ASARCO LLC</u>, 135 S. Ct. 2158, 2164, 192 L. Ed. 2d 208 (2015)(citing <u>Hardt v. Reliance Standard Life Ins. Co.</u>, 560 U.S. 242, 252–253, 130 S.Ct. 2149, 176 L.Ed.2d 998 (2010)). This general standard, fittingly known as the "American Rule," is not absolute because the Supreme Court of the United States has recognized deviations from the "American Rule" where attorney fee shifting is explicitly provided for under statute, law, or by contract. <u>Baker Botts</u>

L.L.P. v. ASARCO LLC, 135 S. Ct. at 2164 (citation omitted). The Movant herein

seeks such an exception.

In this regard, Movant requests that this Court order the payment of

Movant's attorneys' fees incurred in connection with certain alleged vexatious

conduct by the Respondents as a sanction pursuant to 28 U.S.C. §1927.   This

statute states as follows:

> Any attorney or other person admitted to conduct cases in any
> court of the United States or any Territory thereof who so
> multiplies the proceedings in any case unreasonably and
> vexatiously may be required by the court to satisfy personally the
> excess costs, expenses, and attorneys' fees reasonably incurred
> because of such conduct.

28 U.S.C.A. §1927.

As required by the terms of the statute, to award sanctions under §1927,

a court must find that the offending person has "(1) multiplied proceedings; (2)

in an unreasonable and vexatious manner; (3) thereby increasing the cost of

the proceedings; and (4) doing so in bad faith or by intentional misconduct." In

re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, 278 F.3d 175,

188 (3d Cir. 2002)(citing Williams v. Giant Eagle Markets, Inc., 883 F.2d 1184,

1191 (3d Cir. 1989).

The purpose of §1927 sanctions is to "deter an attorney from

*intentionally* and unnecessarily delaying judicial proceedings[.]" LaSalle Nat.

Bank v. First Conn. Holding Grp., L.L.C., 287 F.3d 279, 288 (3d Cir. 2002).

However, courts must take care "'so as not to stifle the enthusiasm or chill the

creativity that is the very lifeblood of the law.'" Id. at 289 (quoting Mone v.

Comm'r of Internal Revenue, 774 F.2d 570, 574 (2d Cir. 1985)). Thus, although

4

§1927 confers upon a court the power to impose sanctions for vexatious and willful conduct, §1927 should be construed narrowly and the powers thereunder exercised "'only in instances of a serious and studied disregard for the orderly process of justice.'" Id. at 288-289 (quoting Ford v. Temple Hosp., 790 F.2d 342, 347 (3d Cir. 1986)(citation omitted)); see also Williams v. Giant Eagle Markets, Inc., 883 F.2d at 1191 (quoting Overnite Transp. Co. v. Chicago Industrial Tire Co., 697 F.2d 789, 795 (7th Cir. 1983)). Accordingly, "before a court can order the imposition of attorneys' fees under §1927, it must find willful bad faith on the part of the offending attorney." Williams v. Giant Eagle Markets, Inc., 883 F.2d at 1191 (citing Baker Industries, Inc. v. Cerberus, Ltd., 764 F.2d 204, 208-209 (3d Cir. 1985)); see also In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, 278 F.3d at 188 (quoting Zuk v. Eastern Pa. Psychiatric Inst., 103 F.3d 294, 297 (3d Cir. 1996)).

It has been held that:

> "Indications of this bad faith are findings that the claims advanced were meritless, that counsel knew or should have known this, and that the motive for filing the suit was for an improper purpose such as harassment." Smith v. Detroit Fed'n of Teachers Local 231, Am. Fed. of Teachers, AFL–CIO, 829 F.2d 1370, 1375 (6th Cir.1987). Inasmuch as § 1927 addresses the impact conduct has on the proceedings, sanctions that are imposed under § 1927 must only impose costs and expenses that result from the particular misconduct. Martin v. Brown, 63 F.3d 1252, 1264 (3d Cir.1995). Moreover, these costs and expenses are limited to those that could be taxed under 28 U.S.C. § 1920. Id.

In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, 278 F.3d at 188.   Bad faith can found to exist based upon a person's overall conduct

throughout the course of litigation and no one single act by the offending party is required to rise to the level of bad faith in itself. Id. at 189-191.

## II.

The facts and procedural history of this Adversary Proceeding, as well the underlying dispute, are extensive.  This Court has previously set forth a review of the history in its opinions and orders dated October 19, 2012, denying *Defendant/Counter-Claimant Ronald W. Grigg's Motion for Relief Under Cal. Code Civ. Proc. § 1008, Fed. R. Bankr. P. 9024/FRCP 60(b), and Cal. Code of Civ. Proc. § 484.100 and Related Sections*, and October 23, 2013, resolving cross-motions for summary judgment. See Mem. Order, Oct. 19, 2012, ECF No. 132 and Mem. Op., Oct. 23, 2013, ECF No. 281. However, as the procedural history of a case is of significant importance in evaluating whether sanctions are warranted under §1927 for a party's alleged unreasonable and vexatious multiplication of proceedings, the Court will revisit the relevant procedural history of this matter herein.

The dispute forming the basis of the within Adversary Proceeding arises from Grigg's representation of Chaney relative to Chaney's marital dissolution proceedings commenced in the state of California more than a decade ago. In connection with those proceedings, Chaney entered into two fee agreements with Grigg–one hourly and the other on a contingency basis–each dated August 31, 2005. See Def./Counter-Claimant, Ronald W. Grigg's Answer, Affirmative Defenses and Countercl. (hereafter, "Answer to Compl.") Ex. D, H, ECF No. 73. Chaney and his former spouse executed a Marital Settlement Agreement

regarding their marital assets in January 2006. See Def./Counter-Claimant Ronald W. Grigg's Statement Admitting and Denying the Alleged Undisputed Facts Contained within Pl./Counter-Def. Blaine Chaney's Statement of Alleged Undisputed Facts Ex. E, ECF No. 235. In accordance with the Marital Settlement Agreement, Chaney received sums for or on his behalf commencing in approximately January 2006. See Mem. Op. 2, ECF No. 281. Upon receiving those sums into Grigg's Client Trust Account, Grigg paid himself nearly $2.2 million dollars in fees. See Mem. Op. 3, ECF No. 281.

Contesting the amounts retained by Grigg, Chaney brought an action against Grigg in the Superior Court of California, County of Los Angeles ("Superior Court") alleging, *inter alia*, unjust enrichment, breach of fiduciary duty, conversion, and fraud and deceit. See Def./Counter-Claimant Ronald W. Grigg's Mot. For Summ. J. Directed to Pl./Counter-Defendant Blaine Chaney's Single Count Compl. Filed Apr. 17, 2012 (12-07008 JAD Doc 1) Seeking to Deny Discharge Ex. C., ECF No. 208. Upon Grigg's petition, the matter proceeded to arbitration by order dated November 9, 2006. See App. Of Doc. Cited in Chaney's Statement of Undisputed Facts in Support of Mot. For Summ. J. on Chaney's Compl. and on Grigg's Countercl. (hereafter, "Chaney's App. of Doc.") Ex. 6, ECF No. 124. The arbitrator determined, *inter alia*, that the contingent fee agreement was unconscionable as applied and on November 20, 2008, a Final Arbitration Award was issued whereby Chaney was awarded a judgment of $2,389,969.31, plus prejudgment interest and daily interest. See Chaney's App. of Doc. Ex. 10, 15. Chaney and Grigg filed competing petitions

with the Superior Court, with Chaney seeking to confirm the Final Arbitration

Award and Grigg seeking to have it vacated. Ultimately, the Final Arbitration

Award was confirmed as a judgment in the amount of $3,030,085.45 on March

15, 2010 (the "California Judgment"), and Grigg's petition was denied. See

Chaney's App. of Doc. Ex. 17.

Thereafter, Chaney was granted a permanent injunction in June 2010,

pursuant to which Grigg was ordered, in part, to turn over funds that he had

improperly paid himself and provide an accounting to Chaney. See Chaney's

App. of Doc. Ex. 19. Grigg unsuccessfully appealed the holdings of the Superior

Court and on October 18, 2011, the Court of Appeal of the State of California

issued an order affirming the award in Chaney's favor. See Chaney's App. of

Doc. Ex. 1. Grigg did not appeal the holding of the Court of Appeal, which

became final on November 17, 2011. See Mem. Order 5, ECF No. 132.

In the meantime, Grigg failed to comply with the injunction order and

was found guilty of contempt of court for his actions, or lack thereof, with said

finding being memorialized on October 25, 2011. See Chaney's App. of Doc. Ex.

21. On December 5, 2011, two days prior to Grigg's sentencing date for his

contempt, Grigg filed for relief under Chapter 7 of the Bankruptcy Code in the

United States Bankruptcy Court for the Western District of Pennsylvania.[2]

After Grigg's continued sentencing hearing held January 9, 2012, Grigg was

sentenced to three days in jail and fined $1,000.00. See Chaney's App. of Doc.

Ex. 25. Thereafter, Grigg filed with the Court of Appeal of the State of California

---

[2] Docketed as case no. 11-71206 (the "Bankruptcy Case").

a *Petition for, In the Alternative, Writ of Prohibition, Hebeas Corpus, Certiorari, Mandamus or Other Relief*, contesting the permanent injunction, the continuation of the contempt proceedings, and Grigg's sentence of imprisonment. See Chaney's App. of Doc. Ex. 30. This *Petition* was denied by the Court of Appeal on July 19, 2012. See Chaney's App. of Doc. Ex. 29.

On April 17, 2012, Chaney commenced the within Adversary Proceeding seeking a determination of non-dischargeability of the debt due from Grigg pursuant to the California Judgment under 11 U.S.C. §523(a)(4)(the "Adversary Proceeding"). Grigg filed counterclaims to Chaney's complaint seeking: (1) the vacatur of orders obtained in the California courts for alleged violation of California Code of Civil Procedure §1008; (2) damages for violation of the automatic stay under 11 U.S.C. §362; and (3) a demand for turnover/accounting from Chaney pursuant to 11 U.S.C. §542. See Answer to Compl., ECF No. 73.

On September 14, 2012, Grigg filed *Defendant/Counter-Claimant Ronald W. Grigg's Motion for Relief Under Cal. Code Civ. Proc. § 1008, Fed. R. Bankr. P. 9024/FRCP 60(b), and Cal. Code of Civ. Proc. § 484.100 and Related Sections* ("First Motion for Relief"), seeking relief from certain judgments entered in the state courts of California. See First Mot. for Relief, ECF No. 100.

On October 19, 2012, the Court issued a *Memorandum Order* denying the First Motion for Relief and finding: (1) that this Court was barred by the Rooker-Feldman doctrine from exercising appellate jurisdiction over the California state judgments; (2) that Grigg's claims were barred by the Full Faith

and Credit Act; (3) that res judicata and collateral estoppel applied to the issues decided by the California state courts,[3] and (4) that the California Code of Civil Procedure §1008(d) prohibited the vacatur of orders sought by Grigg. See Mem. Order, ECF No. 132.  Ten days later, on October 29, 2012, Grigg sought reconsideration of the Court's denial of Grigg's First Motion for Relief by filing *Defendant/Counter-Claimant Ronald W. Grigg's Motion for Reconsideration Relating to Motion for Relief under Cal. Code Civ. Proc. § 1008, Fed. R. Bankr. P. 9024/FRCP 60(b), Fed. R. Bankr. P. 7012(b)/FRCP12(c), and Cal. Code Civ Proc. § 484.100 and Related Sections* ("First Motion for Reconsideration").

Prior to resolution of the First Motion for Reconsideration, on March 7, 2013, Grigg filed yet another motion for relief, styled *Defendant/Counter-Claimant Ronald W. Grigg's Motion for Relief Pursuant to Fed. R. Bankr. P. 9024/Fed. R. Civ. P. 60(B)* ("Second Motion for Relief"), raising questions as to the finality of certain California state court orders, and asserting that "new" grounds for relief were recently discovered, including an alleged technical failure of Chaney to comply with Fed. R. Civ. P. 30(e) in connection with discovery before this Court, as well as alleged misrepresentations by the state court arbitrator regarding the arbitrator's qualifications. See Second Mot. for Relief, ECF No. 189.

---

[3] The Court found in its *Memorandum Order* that res judicata and collateral estoppel prevented review of issues decided by the California state courts including: (1) Judge Munoz's August 31, 2007 dismissal order, (2) the arbitrator's jurisdiction and bias, (3) errors purportedly correctable on appellate review, and (4) the trial court's failure to issue a statement of decision. Mem. Order 8-9.

On September 20, 2013, the Court entered a *Memorandum Opinion* and *Order of Court* denying both the First Motion for Reconsideration and the Second Motion for Relief with prejudice. In issuing its denial, the Court noted that "the *Motion for Reconsideration* rehashes the arguments previously made by Grigg in the [*First*] *Motion for Relief*, attempts to make arguments that could have been previously raised in the first instance and merely takes issue with the Court's finding." See Mem. Op. 14, ECF No. 270.  Among the arguments improperly raised by Grigg was his assertion that the California Judgment was not final. Id. at 12-14. As to the Second Motion for Relief, the Court observed that all of the "newly" discovered evidence cited by Grigg did not support relief because the cited evidence was previously discoverable and did not support relief on the merits. See generally Mem. Op., ECF No. 270. One week later, on September 27, 2013, Grigg filed his *Defendant/Counter-Claimant Ronald W. Grigg's Motion for Reconsideration Relating to Motion for Relief Pursuant to Fed. R. Bankr. P. 9024/Fed R. Civ. P. 60(b), et seq.* (the "Second Motion for Reconsideration"). Although styled as seeking reconsideration of the Second Motion for Relief, the Second Motion for Reconsideration also addressed arguments concerning issues raised in the First Motion for Reconsideration, including the finality of the California Judgment.[4]

---

[4] The Court previously observed in its *Memorandum Opinion* resolving the Second Motion for Reconsideration that:

> The caption of the subject motion suggests that Grigg is seeking only reconsideration of the *Second Motion for Relief*. However, the body of the motion addresses the ruling of this Court regarding both the *First Motion for Reconsideration* and the *Second Motion for Relief*. Therefore, it appears that Grigg

In the midst of the litigation on the various motions for relief and reconsideration, Chaney and Grigg filed respective motions for summary judgment,[5] which were resolved in Chaney's favor on October 23, 2013 by *Memorandum Opinion* and *Order of Court* (the "October 23rd Order"). Grigg filed a *Notice of Appeal* to the District Court regarding the October 23rd Order and related orders.

With the cross-motions for summary judgment adjudicated, on November 6, 2013, the Court issued its *Memorandum Opinion* and *Order of Court* denying the Second Motion for Reconsideration. In setting forth its reasoning supporting the denial, the Court observed that the grounds for relief sought by Grigg in the numerous motions for relief/reconsideration were either previously asserted (and denied) or improperly raised by Grigg in the context of a motion for "reconsideration." See generally Mem. Op., ECF. No. 294. Moreover, of Grigg's filings generally, the Court observed:

> Grigg complains of the period of time in which motions remain pending. The Court notes, however, that motions remain pending, in part, because the Court has been required to address the reconsideration motions filed. Additionally, Grigg continues to add numerous filings that the Court must consider (often seeking the

---

now seeks, in part, reconsideration of the denial of the reconsideration. Grigg also seeks reconsideration of the denial of his *Second Motion for Relief*.

Mem. Op. 3, ECF No. 294.

[5] On October 12, 2012, Chaney filed his *Plaintiff/Counter-Defendant, Blaine John Chaney's Motion for Summary Judgment on Chaney's Complaint* and *Plaintiff/Counter-Defendant, Blaine John Chaney's Motion for Summary Judgment, In the Alternative, For Partial Summary Judgment of Defendant/Counter-Claimant, Ronald Grigg's Counterclaims.* On March 26, 2013, Grigg filed his *Defendant/Counter-Claimant Ronald W. Grigg's Motion for Summary Judgment Directed to Plaintiff/Counter-Defendant Blaine Chaney's Single Count Complaint filed April 17, 2012 (12-07008 JAD Doc 1) Seeking to Deny Discharge.*

same relief and or making the same arguments). Accordingly, any complaints in this regard rest with Grigg himself.

Mem. Op. 10, n. 11, ECF No. 294.

Further, the Court noted that throughout the duration of the Adversary Proceeding, Chaney had repeatedly requested that the Court impose sanctions, including sanctions pursuant to 28 U.S.C. §1927, against Grigg and Attorney Carnevali, by way of separate motion, *Chaney's Motion for Sanctions Against Grigg and Carnevali and Disqualification of Carnevali*, as well as in several responses to various matters. See Mem. Op. 12, ECF No. 294.  Observing that the full extent of a 28 U.S.C. §1927 inquiry may not be known until the end of litigation, the Court ordered that the issue of 28 U.S.C. §1927 sanctions be reserved "until such time as appeals have been exhausted and Chaney has filed a detailed pleading in support of his request." See Order of Ct., ECF No. 295.

During the pendency of the appeal, the Bankruptcy Case was closed on April 3, 2014. On November 10, 2014, the Honorable Kim R. Gibson of the United States District Court for the Western District of Pennsylvania issued an order affirming this Court's October 23rd Order (the "District Court Order").[6] Grigg appealed the District Court Order to the United States Court of Appeals for the Third Circuit, which in a decision dated October 6, 2015, affirmed the District Court Order. See Chaney v. Grigg (In re Grigg), 619 F. App'x 195 (3d Cir. 2015).

---

[6] The District Court Order was docketed in the Adversary Proceeding as ECF No. 318.

Following the docketing of the order of the Third Circuit Court of Appeals on October 28, 2015, there was no activity on the docket of this Adversary Proceeding and the Court closed this Adversary Proceeding on January 15, 2016. On September 13, 2016, nearly eight months following the closure of the Adversary Proceeding, Chaney filed his *Motion to Reopen* in the Adversary Proceeding and his *Amended Motion to Reopen* in the Bankruptcy Case (together, the "Motions to Reopen") for the purpose of pursuing sanctions against the Respondents under 28 U.S.C. §1927, Federal Rule of Bankruptcy Procedure 9011, and 11 U.S.C. §105. The Court would note that Chaney did not attach a sanctions motion to his Motions to Reopen, nor did he contemporaneously file a sanctions motion even though such a task could have easily been done by counsel to Chaney.  As such, all that was pending in this Court at that time were the Motions to Reopen and requests to waive related filing fees.

In response to the Motions to Reopen, Attorney Carnevali and Spence Custer filed dual motions to strike the Motions to Reopen to the extent "that such Motion[s] [sought] to pursue sanctions under Bankruptcy Rule of Civil Procedure 9011[.]" See Mot. to Strike 6, Adv. No. 12-7008, ECF No. 327; Mot. to Strike 6,  Bankr. No. 11-71206, ECF No. 334.

A hearing was held on the Motions to Reopen and the motions to strike on October 20, 2016.  By *Order of Court* dated October 25, 2016 (the "October 25th Order), this Court granted the Motions to Reopen. The Court also granted, in part, the motions to strike "in that relief sought by Plaintiff under

Fed.R.Civ.P. 11 and/or Fed.R.Bankr.P. 9011 is denied for failure to comply with the 21-day safe harbor provision of Fed.R.Civ.P. 11(c)(2) and Fed.R.Bankr.P. 9011(c)(1)(A) respectively." Order of Ct. 2, ECF No. 335. Accordingly, the Court further ordered that any request for sanctions going forward be limited to those available pursuant to 28 U.S.C. §1927. Id. By additional *Order of Court* issued that same day, the Court ordered that any request for sanctions by Chaney be consolidated and all related pleadings be filed in the Adversary Proceeding (the "Consolidation Order"). See Order of Ct., ECF No. 336.

Subsequent to the issuance of the October 25th Order and the Consolidation Order, and despite the Court's reopening of the Bankruptcy Case and Adversary Proceeding for the purpose of Chaney's pursuit of sanctions, there was no activity on either docket for a period of over two months. Due to the lapse in time without activity, on December 28, 2016, the Court *sua sponte* issued an *Order of Court* advising that if no activity occurred on the docket of either case by January 13, 2017, then both the Bankruptcy Case and the Adversary Proceeding would be re-closed (the "December 28th Order"). See Order of Ct., ECF No. 339.

On January 13, 2017, the last day for action as prescribed by the December 28th Order, Chaney filed his Motion for Sanctions whereby Chaney seeks an order imposing sanctions in the amount of $732,616.54[7] against

---

[7] Chaney alleges that the amount of sanctions sought, $732,616.54, represents the total amount of legal expenses incurred "as a result of Grigg, Carnevali, and the law firm Spence

Grigg, Attorney Carnevali, and Spence Custer, pursuant to 28 U.S.C. §1927 for their alleged unreasonable and vexatious multiplication of proceedings.

Citing Chaney's inclusion of Attorney Carnevali and Spence Custer as respondents of the Motion for Sanctions,[8] on January 24, 2017, Attorney Carnevali sought to withdraw as counsel for Grigg, which was granted upon consent. Thereafter, Respondents filed responses to the Motion for Sanctions, with Grigg filing his *Response to the Motion for Sanctions filed by Blaine John Chaney* on February 24, 2017, and Attorney Carnevali and Spence Custer filing their joint *Response to Motion for Sanctions filed by Blaine John Chaney* on February 27, 2017. Both Grigg and separately Attorney Carnevali and Spence Custer each raised in their responses, *inter alia*, the issue of timeliness of the Motion for Sanctions. On February 27, 2017, Chaney filed a *Request for Judicial Notice* of prior court proceedings[9] and an affidavit of Chaney's counsel, Joseph A. Yanny, Esq. ("Attorney Yanny"), regarding the sequence of actions taken by Attorney Yanny with respect to the filing of the Motions to Reopen.

The Court held a hearing on the Motion for Sanctions on February 28, 2017. As a result of the arguments set forth in the Motion for Sanctions, the

---

Custer's bad faith conduct in violation of 28 U.S.C. § 1927." Mot. for Sanctions 15, ECF No. 341.

[8] In his Motion to Withdraw as Counsel, Attorney Carnevali stated: "Movant is unable to perform his duties due to the potentially adverse interests of Movant and the Debtor as a result of Chaney's Motion for Sanctions." See Mot. to Withdraw as Counsel in the Absence of Client Consent 4, at ¶ 18, ECF No. 343.

[9] Chaney requested that this Court take judicial notice of "it[sic] own files, the District Court No.3:13-CV-00292-KRG & the Third Circuit No.14-4638 Appeal of Debtor Ronald Grigg & the attached Opening Briefs of Mr. Grigg in each appeal respectablly[sic]." See Req. for Judicial Notice 1, ECF No. 357.

responses thereto, and those placed on the record at the hearing, the Court ordered that additional briefing be submitted by the parties regarding the timeliness of the Motion for Sanctions, which the Court indicated would be considered as a threshold issue.[10] On March 21, 2017, Chaney filed his *Supplemental Brief on Timeliness of Chaney's Motion for Sanctions* ("Chaney's Supplemental Brief"), as well as two supporting affidavits.  Attorney Carnevali and Spence Custer filed their *Reply Brief in Response to Supplemental Brief on Timeliness of Chaney's Motion for Sanctions* on April 4, 2017 ("Counsel's Supplemental Brief").  That same day, Grigg filed his *Brief in Opposition to Motion for Sanctions filed by Blaine John Chaney* ("Grigg's Supplemental Brief"), whereby Grigg incorporated Counsel's Supplemental Brief with the sole additional statement that "sanctions under 28 U.S.C. §1927 cannot be awarded against Grigg, but rather, only against his counsel." See Grigg's Suppl. Br., ECF No. 364.

The timeliness of the Motion for Sanctions has been fully briefed in accordance with this Court's direction and the matter is ripe for adjudication.

**III.**

With respect to timing, while a request for sanctions made pursuant to 28 U.S.C. §1927 need not be filed prior to the entry of final judgment, the time

---

[10] At the hearing, the Court indicated that upon completion of the supplemental briefings that it would address the issue of timeliness of the Motion for Sanctions.  The Court further stated that if this matter proceeded past the timeliness issue, that it would likely require Chaney to re-file the Motion for Sanctions in a format which comports with the rules of pleading and thereafter schedule a status conference.

for making such a request is not indefinite, but instead must be brought within a "reasonable time." <u>In re Schaeffer Salt Recovery, Inc.</u>, 542 F.3d at 102.

As set forth above, in its *Order of Court* dated November 6, 2013, this Court reserved the issue of sanctions pursuant to 28 U.S.C. §1927 until the expiration of all appeals in the within matter, stating:

> It Is Further **ORDERED** that the Court shall reserve the matter of sanctions pursuant to 28 U.S.C. §1927 until such time as appeals have been exhausted and Chaney has filed a detailed pleading in support of his request.

It is uncontested that following appeal of the October 23rd Order to the District Court, and then subsequently to the United States Court of Appeals for the Third Circuit, the Third Circuit issued its decision affirming the holdings of the District Court on October 6, 2015. It is further uncontested that Grigg did not file a petition for writ of certiorari to the United States Supreme Court prior to expiration of the applicable timeframe for such filing on January 4, 2016.[11] Thus, in compliance with this Court's mandate set forth in the November 6, 2013 *Order of Court*, the "timeliness" of Chaney's Motion for Sanctions is measured from the first day he was eligible to file the Motion for Sanctions in accordance with the prior order of this Court, with said date being January 5,

---

[11] Rule 13 of the Rules of the Supreme Court of the United States sets forth as follows:

> Unless otherwise provided by law, a petition for a writ of certiorari to review a judgment in any case, civil or criminal, entered by a state court of last resort or a United States court of appeals (including the United States Court of Appeals for the Armed Forces) is timely when it is filed with the Clerk of this Court within 90 days after entry of the judgment. A petition for a writ of certiorari seeking review of a judgment of a lower state court that is subject to discretionary review by the state court of last resort is timely when it is filed with the Clerk within 90 days after entry of the order denying discretionary review.

2016 (the "Permitted Filing Date").  However, no such motion was filed until

January 13, 2017. Thus, the question herein becomes whether the Motion for

Sanctions, having been filed one year and eight days after the Permitted Filing

Date, was brought within a "reasonable time."

In establishing the "reasonable time" standard, the Third Circuit in

Schaeffer Salt, supra., declined to define the outer limits of "reasonable time"

with respect to a §1927 sanctions request, observing that the motion before it

was brought within nine days of bankruptcy case dismissal and that "[n]ine

days clearly fits within any definition of "outer limits." In re Schaeffer Salt

Recovery, Inc., 542 F.3d at 102.[12]

Outside of the Third Circuit, courts examining the "timeliness" of a

request for sanctions have found that motions filed as much as four months

following a triggering event may be timely depending on the circumstances of

the individual case. See Steinert v. Winn Grp., Inc., 440 F.3d 1214 (10th Cir.

2006)(request for attorneys' fees previously mooted pending completion of

discovery but re-filed one month after deposition was not unnecessarily or

unreasonably delayed in seeking 28 U.S.C. §1927 sanctions); Smith v. CB

Commercial Real Estate Grp., Inc., 947 F. Supp. 1282 (S.D. Ind. 1996)(finding

that a §1927 sanctions request brought ninety-two days after entry of

summary judgment was timely); Intellect Wireless, Inc. v. Sharp Corp., 87 F.

Supp.3d 817 (N.D. Ill. 2015)(approximate four month delay in seeking

sanctions was reasonable where in the period between "discovery" of

---

[12] The Court notes that no party has provided this Court with any authority from within the
Third Circuit which has defined "reasonable time" in the context of §1927 sanctions requests.

sanctionable conduct and filing the parties were engaged in discovery disputes and adverse inference litigation to establish existence of sanctionable conduct); but see In re Cent. Ice Cream Co., No. 85 C 10073, 1986 WL 13635 (N.D. Ill. Nov. 21, 1986)(finding that a six week delay in seeking sanctions would be unreasonable).

The weight of the case law outside the Third Circuit is that motions commenced after the passage of eight or more months are generally untimely. See In Home Gambling Network, Inc. v. Piche, No. 2:05-CV-610-DAE, 2015 WL 1734928, at *19 (D. Nev. April 16, 2015)(citing to "reasonable time" standard set forth in In re Schaeffer Salt Recovery, Inc., supra, the court found that a fifteen month delay in filing a motion for sanctions under 28 U.S.C. §1927 "cannot be considered reasonable by any standard"); XCO Int'l v. Pac. Sci. Co., No. 01 C 6851, 2003 U.S. Dist. LEXIS 7286 (N.D. Ill. April 25, 2003)(denying a request for 28 U.S.C. §1927 sanctions as untimely due to eight month delay in filing), aff'd in part and rev'd in part, 369 F.3d 998 (7th Cir. 2004)(upholding denial of sanctions without discussion of timeliness), reh'g denied, 2004 U.S. App. LEXIS 13303 (7th Cir. June 24, 2004).

In any event, the Third Circuit has yet to establish a formal standard for evaluating what constitutes a "reasonable time" by which a litigant may file a §1927 sanctions request.  However, both the Third Circuit and courts within the Third Circuit have set forth the equitable considerations that a court should consider with respect to other types of motions which have a "reasonable time" of filing requirement.

For example, Federal Rule of Civil Procedure 60, made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 9024, provides a mechanism for seeking relief from a final judgment. These rules expressly provide that that a Rule 60 motion must be filed within a "reasonable time." Specifically, Rule 60 of the Federal Rules of Civil Procedure states, in pertinent part, as follows:

> (b) Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
>> (1) mistake, inadvertence, surprise, or excusable neglect;
>> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>> (4) the judgment is void;
>> (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>> (6) any other reason that justifies relief.
>
> (c) Timing and Effect of the Motion.
>
>> (1) *Timing.* **A motion under Rule 60(b) must be made within a reasonable time**--and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding.

Fed. R. Civ. P. 60(b)(emphasis added).

Per the plain text of the rules, all motions brought under Rule 60(b) must be made within a "reasonable time." <u>See</u> Fed.R.Civ.P. 60(c). For motions brought pursuant to subsections (b)(1)-(3), relief sought more than one year after the entry of judgment is *per se* untimely. Fed.R.Civ.P. 60(c); <u>See also</u> <u>In re</u>

Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prod. Liab. Litig., 383 F. App'x 242, 246 (3d Cir. 2010). However, this one year limitation represents an outer limit and motions commenced within the one year period may still be adjudged untimely if not brought within a "reasonable time." In re Diet Drugs, 383 F. App'x at 246; Taylor v. Taylor (In re Taylor), 357 B.R. 360 (Bankr. W.D. Pa. 2006)(finding that a five-and-a-half month delay in filing a Rule 60(b)(1) motion was unreasonable "not only because of the length of such delay but also, and most importantly, because the [d]ebtors [had] no excuse for such delay"), aff'd No. 2:07-cv-00188 (W.D. Pa. Aug. 7, 2007), appeal dismissed 343 F. App'x. 753 (3d Cir. 2009).

As the Third Circuit observed:

> What constitutes a "reasonable time" depends on the circumstances of each case. Delzona Corp. v. Sacks, 265 F.2d 157, 159 (3d Cir.1959). A court considers many factors, including finality, the reason for delay, the practical ability for the litigant to learn of the grounds relied upon earlier, and potential prejudice to other parties. Kagan v. Caterpillar Tractor Co., 795 F.2d 601, 610 (7th Cir.1986); Ashford v. Steuart, 657 F.2d 1053, 1055 (9th Cir.1981).

In re Diet Drugs, 383 F. App'x at 246; see also INS. Co. of Greater N.Y. v. Fire Fighter Sales & Serv. Co., 312 F.R.D. 394, 401 (W.D. Pa. 2015)(citation omitted)(observing that the timeliness of a Rule 60(b)(6) motion may be determined by considering the interest of finality, the reason for the delay, the practical ability to learn of the grounds relied upon for relief at an earlier time, and whether relief would prejudice the non-moving party); and In re Doe, No. 16-1681, 2017 WL 937451, at *2 (3d Cir. Mar. 9, 2017)(citation omitted)(factors that a court should consider in assessing whether a motion

was brought within a "reasonable time" include "'the interest in finality, the reasons for delay, the practical ability of the litigant to learn earlier of the grounds relied upon, and prejudice to other parties.'")

By the language of In re Diet Drugs, the list of factors set forth therein is non-exhaustive and courts applying this standard have denied Rule 60(b) motions as untimely without finding that each identified consideration supports a finding of untimeliness. See Kagan v. Caterpillar Tractor Co., supra. (upholding the lower court's denial of Rule 60(b)(6) relief without a discussion of prejudice to the non-moving party); see also Lieber v. Marcus, No. 12-6549, 2014 WL 268654 (D.N.J. Jan. 23, 2014)(Rule 60(b)(6) motion filed nearly one year after entry of judgment was not brought within a "reasonable time" as movant provided no explanation for the delay in filing); Edwards v. Vaughn, No. 1:CV-91-0914, 2014 WL 2115228 (M.D. Pa. May 21, 2014)(finding that the interest of finality and petitioner's lack of good reason for twenty-two year delay in challenging denial of habeas corpus relief rendered petitioner's Rule 60(b)(6) motion untimely).

Like Rule 60(b) motions, what constitutes a "reasonable time" for bringing a request for sanctions under 28 U.S.C. §1927 depends on the circumstances of the individual case and courts examining the timeliness of a §1927 motion have considered the same or similar factors. See In Home Gambling Network, Inc. v. Piche, supra. (fifteen month delay in seeking §1927 sanctions was unreasonable especially when considering that movants provided no explanation for the delay); XCO Int'l v. Pac. Sci. Co., 2003 U.S.

23

Dist. LEXIS at *15 (section 1927 request was untimely where movant waited over eight months after discovery of bases for motion and failed to raise any equitable considerations to explain the delay); <u>Intellect Wireless, Inc. v. Sharp Corp.</u>, 87 F.Supp.3d at 840 (timeliness of a §1927 motion is a case specific determination in which an "unjustified delay in filing a § 1927 motion would render it untimely[.]")

As such, this Court finds no reason why the factors identified as probative of the timeliness of a Rule 60(b) request in <u>In re Diet Drugs</u> should not likewise be considered probative of the timeliness of a §1927 sanctions request. Accordingly, this Court will examine the timeliness of the Motion for Sanctions using the standard discussed in <u>In re Diet Drugs</u>.

### A.
### The Interests of Finality and Prevention of Unfair Surprise Weigh in Favor of a Finding of Untimeliness

Central to Chaney's argument against a finding of untimeliness is his presupposition that the Respondents are not unfairly surprised by the filing of the Motion for Sanctions. However, the Court is not convinced that this is the case herein.  Although notified during the course of litigation on the merits of the Adversary Proceeding that Chaney sought sanctions and would be permitted to make such a filing upon expiration of all appeal periods, at some point following the Permitted Filing Date that "notice" expires for purposes of evaluating whether a motion under 28 U.S.C. §1927 is timely. Stated another way, the prior notice does not act to negate surprise indefinitely.  After a reasonable amount of time, the parties should be permitted to move on with

their lives without the expectation that they live in perpetual anticipation of sanctions litigation. This proposition is supported by the Court's strong interest in finality of a case. See Schake v. Colt Indus. Operating Corp. Severance Plan for Salaried Employees, 960 F.2d 1187, 1193 (3d Cir. 1992)("A fundamental principle of justice is that a case must come to an end; it should not be protracted interminably . . . .")

Even affording Chaney the smallest window of delay relative to this matter, that being the over four-and-a-half month period between Attorney Yanny's April 26, 2016 letter[13] and the September 13, 2016 Motions to Reopen, the Court finds such delay unreasonable under the circumstances of this case because Chaney had an affirmative duty to bring his motion relatively promptly and no convincing excuse whatsoever has been provided for the delay. Accordingly, the interests of finality and prevention of unfair surprise weigh in favor of finding that the Motion for Sanctions is untimely.

**B.**
**Chaney's Reasons for the Over One-Year Delay in Filing the**
**Motion for Sanctions, Despite Being Aware of the Bases Thereof**
**Prior to the Permitted Filing Date, are Unpersuasive and**
**Do Not Support a Finding of Timeliness**

Based on the procedural history of the case, it is indisputable that Chaney knew of the grounds for his Motion for Sanctions well before the

---

[13] Although Chaney avers that Attorney Yanny placed calls to Attorney Carnevali's office during the months of May and June, the April 26, 2016 letter is the latest documented correspondence submitted to the Court. The only excuse offered by Attorney Yanny for not filing the sanctions motion during this time period is that Attorney Carnevali never returned Attorney Yanny's phone calls.

Permitted Filing Date. Regardless, Chaney waited over a year thereafter before filing his Motion.

Chaney offers three primary justifications for the one-year delay: (1) Attorney Yanny's attempts to negotiate an out of court resolution of the attorneys' fees issues in accordance with Pennsylvania's Code of Civility, (2) the "time-consuming complicated financial analysis" of sorting through and compiling the attorneys' fees to be recovered by the Motion for Sanctions, and (3) Attorney Yanny's July 2016 injury which allegedly resulted in his temporary disability. The Court finds that none of the proffered explanations justify the one-year delay in filing the Motion for Sanctions.

First, Chaney avers that the delay in filing the Motion for Sanctions is excusable as it was caused, in part, by Attorney Yanny's, attempts to negotiate a resolution of the sanctions issue outside of court in accordance with Pennsylvania's Code of Civility. In his pleadings, Chaney alleges that following the Permitted Filing Date, Attorney Yanny reached out to Attorney Carnevali via telephone on multiple occasions to no avail. Having received no response, Attorney Yanny issued two "meet and confer" letters to Attorney Carnevali dated April 15, 2016 and April 26, 2016. <u>See</u> Chaney's Suppl. Br. Ex. A-B. Chaney avers that while Attorney Yanny received a response to the April 15, 2016 letter, no response was received to the letter dated April 26, 2016, and Attorney Yanny thereafter recommended making phone calls to Attorney Carnevali's office through May and June of 2016. <u>See</u> Decl. of Joseph Yanny ¶

5-6, ECF No. 361. Ultimately, Attorney Yanny was unsuccessful in his attempts to speak with Attorney Carnevali.

In advancing his position, Chaney acknowledges that the Third Circuit imparted no duty upon him to attempt to "meet and confer" with Respondents prior to filing the Motion for Sanctions. <u>See</u> Chaney's Suppl. Br. ¶ 11. Moreover, Chaney provides no legal authority for his proposition that attempting to resolve the fee issue outside of court extended the "reasonable" period of time for seeking §1927 sanctions. Instead, Chaney argues that his actions were in accordance with the Pennsylvania Code of Civility and that the "Court should not encourage the quick filing of motions at the expense of civility. . . ." Chaney's Suppl. Br. ¶11-12.

While the Court agrees that civility and proper decorum should be observed in the practice of law, and has issued orders in this Adversary Proceeding to that effect,[14] the Court also notes that the Pennsylvania Code of Civility sets forth no overt mandate that a party attempt to resolve matters extra-judicially prior to commencing an action. <u>See generally</u> Pa. Code of Civility, Art. II. Chaney's counsel did, however, have an affiramtve duty to

---

[14] The Court denied Attorney Yanny's *Motion for Pro Hac Vice Admission* to this Court due to his uncivil conduct towards opposing counsel. <u>See</u> Order, July 3, 2012, ECF No. 79.  As an end-run of this Court's order, Attorney Yanny, without the prior knowledge of this Court, sought and was granted admission to the United States District Court for the Western District of Pennsylvania-- thereby allowing Attorney Yanny to participate in this matter as counsel of record. This Court imposed no consequences upon Attorney Yanny for this end-run because Attorney Yanny represented to this Court that he disclosed the denial of his *pro hac vice* motion to the District Court.  The records of the District Court, however, do not have a record of such disclosure and no transcript or recording exists of the proceeding whereby Attorney Yanny was admitted to the District Court.

"make reasonable efforts to expedite litigation . . . ." <u>See</u> Pennsylvania Rule of Professional Conduct 3.2.

Even if a requirement to attempt to "meet and confer" did exist, Attorney Yanny's purported sixth-month campaign of predominately unreturned calls to Attorney Carnevali's office extended far beyond the bounds of what would be reasonably required under the circumstances and cannot be used to justify Attorney Yanny's delay in filing a sanctions motion for Chaney. As with filing deadlines and statutes of limitations, Chaney cannot rely on his unilateral efforts to settle the fee dispute without court intervention to indefinitely extend the reasonable period of time to commence a motion under 28 U.S.C. §1927. This is especially true where, as here, there is no indication that the Respondents misled Chaney about their intent to settle the dispute outside of court and there was no legal obligation for Chaney and Respondents to engage in such pre-filing discussions.[15] <u>See</u> <u>Hedges v. U.S.</u>, 404 F.3d 744, 751 (citation omitted) (equitable tolling of statute of limitations is applicable where (1) the defendant actively misled the plaintiff about its cause of action; (2) the plaintiff was prevented from asserting its cause of action in some extraordinary way; or (3) the plaintiff mistakenly, but timely, asserted its rights in another forum).

Chaney further attempts to justify the delay in filing the Motion for Sanctions due to the averred necessity to "compile the thousands of hours and hundreds of thousands of dollars that needed to be documented to address the

---

[15] The Court notes that despite Chaney's emphasis on civility and notice, as set forth above the motions to strike the Motions to Reopen were granted, in part, due to Chaney's failure to comply with the twenty-one day safe harbor provision of Fed. R. Civ. P. 11 and/or Fed. R. Bankr. P. 9011.

abuse engaged in by the non-movant . . .   An analysis of the entirety and relevance of those billing[s] required time and resources.  Only after, could the motion be filed." Chaney's Suppl. Br. 6. In essence, Chaney argues that Respondents' claims of untimeliness of the Motion for Sanctions should be rejected due to the "time-consuming complicated financial analysis required by the [Motion for Sanctions]." Id.  The Court disagrees.

Upon review, the billing statements attached to the Motion for Sanctions appear to be inclusive of all work completed by the respective counsel engaged on behalf of Chaney in the Bankruptcy Case, Adversary Proceeding, and subsequent appeals, with absolutely no differentiation between which fees were incurred due to alleged sanctionable conduct and which were not. This observation was confirmed by Attorney Yanny at the hearing on the Motion for Sanctions wherein he admitted upon questioning by the Court, that the amount sought by the Motion included fees not associated with the defense of alleged sanctionable conduct—that is, not associated with the defense of the multiple motions for "reconsideration" or the multiple motions "for relief" of the California state court judgment.[16] As such, to the extent that the time required to analyze and calculate the amount of fees recoverable as a sanction could be used to justify the delay in filing the Motion for Sanctions, no such "time-consuming complicated financial analysis" appears to have been completed

---

[16] Upon questioning by the Court regarding to the inclusion of attorneys' fees for matters Attorney Yanny admitted were not subject to sanction (i.e. the bankruptcy case filing, matters related to the litigation of defalcation, etc.) Attorney Yanny stated that:  "I simply gave the Court all of the billings so that the Court could see in perspective and...everything that was done and needed to be done in the case. Some of the things I believe were in opposition to sanctionable conduct. Some of them weren't."

because Chaney improperly seeks to recover all legal fees and expenses incurred by him with respect to the entire bankruptcy case of Grigg, and not just the fees incurred as a result of the multiple "reconsideration" or "relief from judgment" proceedings.

However, even if any financial analysis was completed prior to filing the Motion for Sanctions, such analysis would not excuse the unreasonable one-year delay as the record suggests that the analysis was or should have been completed by April 6, 2016 (which is approximately nine months before the sanctions motion was filed).

In support of the total amount claimed, Chaney attaches to his Motion invoices from his counsel: Yanny & Smith; Johnson Law, PLLC; and Yanni Law Firm.  Each of the invoices submitted by Yanny & Smith is dated April 6, 2016, and the invoice from Yanni Law Firm is dated February 25, 2016.  The invoice for Johnson Law, PLLC is undated, but appears to be a revolving statement of fees incurred, reflective of payments, with a last entry date of March 28, 2013. Accordingly, Chaney either had possession of or access to all of the statements attached in support of his Motion for Sanctions as of April 6, 2016 at the latest.

Finally, Chaney argues that the delay in filing is excused by Attorney Yanny's involvement in an accident on July 3, 2016, which allegedly rendered Attorney Yanny unable to practice law for a period of several months. Chaney avers that the Motions to Reopen were filed shortly after Attorney Yanny's disability ceased in early September 2016.  While sympathetic to the health concerns of Attorney Yanny, the July 3, 2016 injury does not justify the delay

for several reasons.   First, at the time of Attorney Yanny's July 3, 2016 accident, approximately six months had already elapsed since the Permitted Filing Date, which in itself, is a questionable period of time for seeking §1927 sanctions. Second, in the event of disability, it is the responsibility of counsel to ensure that a viable plan is in place to protect the interests of clients. See Pa. RPC 1.3. Lastly, in this matter, Chaney was represented by multiple attorneys and law firms for whom fees are sought in the Motion for Sanctions, including several individuals from within Attorney Yanny's own firm. No reasonable justification has been advanced by Chaney as to why any other attorney retained in this matter could not have filed the Motion for Sanctions during Attorney Yanny's alleged period of disability.[17]

Furthermore, the Court notes that even if one or more of the reasons proffered by Chaney were found to reasonably justify the delay in seeking the re-opening of the Bankruptcy Case and Adversary Proceeding in order to pursue sanctions more than eight months after the Permitted Filing Date, Chaney has offered no reasonable explanation for the approximate two-and-a-half month delay in filing the Motion for Sanctions after the granting of the Motions to Reopen – and even then, it appears that the only reason the Motion for Sanctions was not further delayed was due to this Court's *sua sponte* issuance of the December 28th Order mandating that Chaney file his §1927 motion upon threat of re-closure of the case.  This additional delay is further

---

[17] The Court notes that the invoice for the Yanni Law Firm reflects a total of $850.00 in charges for preparing a motion to reopen over the period of October 14, 2015 through October 19, 2015. See Mot. for Sanctions Ex. E., ECF No. 341.

exacerbated by the fact that, as discussed below, the Motion for Sanctions fails to comport with the applicable rules of pleading and is overly-broad in its request for fees; thus, necessitating Chaney to re-file the motion in the event this matter proceeds past the timeliness analysis. Accordingly, Chaney's failure to provide an adequate justification for the one-year delay in filing the Motion for Sanctions, despite being aware of the grounds for said Motion prior to the Permitted Filing Date, weighs heavily in favor of a finding of untimeliness.

### C.
### Prejudice to the Respondents Weighs Against a Finding of Untimeliness

Chaney avers that not only have the Respondents not been prejudiced by the filing of the Motion for Sanctions, but that an absence of prejudice was conceded to by the Respondents at the hearing on the Motion.  Respondents disagree, averring that no such concession was made, but instead that the issue of prejudice was not addressed by the Respondents on the basis that prejudice is not a relevant factor.

This Court, in adopting the "reasonable time" analysis like the one used for Rule 60(b) motions, agrees that prejudice is a relevant factor in evaluating the timeliness of the Motion for Sanctions. However, upon review of the record, this Court disagrees with Chaney that Respondents have admitted to a lack of prejudice. Regardless, as no evidence or arguments have been presented by the Respondents which support a finding of prejudice herein, the Court cannot find that the element of prejudice weighs in favor of a determination of untimeliness. But such absence of prejudice is not dispositive of the issue at hand. Simply stated, the existence or non-existence of prejudice is not the sole

determinative factor utilized by the Court in determining the timeliness of the Motion *sub judice*.

### D.
### Other Considerations Weigh in Favor of a Finding of Untimeliness

In addition to those considerations already discussed, the Court finds that the disadvantage and burden to the Court and the Respondents caused by the delay in filing the Motion for Sanctions, as well as Chaney's failure to conform his pleading to the applicable rules of pleading weigh in favor of a finding of untimeliness.

As set forth above, once the Motions to Reopen were granted on October 25, 2016, Chaney inexplicably failed to file the Motion for Sanctions immediately thereafter placing an onus upon the Court of monitoring the docket and ultimately issuing the December 28th Order mandating action by Chaney upon threat of re-closure of the Bankruptcy Case and Adversary Proceeding. Again, it was not until the very last day set forth by the December 28th Order, January 13, 2017, that Chaney finally filed the Motion for Sanctions. However, even with the year-plus timeframe it took Chaney to draft and file the Motion for Sanctions, the Motion itself fails to comply with the applicable rules of pleading and is admittedly over-inclusive with respect to the requested attorneys' fees.

Federal Rule of Civil Procedure 10(b), made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7010, and Local Rule

5005-13(b)[18] require that a pleading set forth the moving party's claims in individual, sequentially numbered paragraphs. Despite this requirement, Chaney filed the Motion for Sanctions in a manner devoid of such format and more akin to that of a legal memorandum. As a consequence of this formatting irregularity, Respondents were unable to admit or deny Chaney's averments hampering their ability, as well as the Court's ability, to conclusively identify the disputed versus undisputed questions of law and/or fact in advance of the February 28th hearing. To remedy this issue, at the February 28th hearing, the Court indicated that if the Motion for Sanctions were to proceed past the timeliness issue, the Court would likely require Chaney to re-file the Motion for Sanctions in compliance with the rules of pleading. Said re-filing would necessitate the Court to hold further hearings in this matter and for the Respondents, who have already expended time and resources in responding to and attending a hearing on the non-compliant Motion for Sanctions, to once-again file responses to and attend hearings on the amended motion. This would not be an insignificant amount of work for all parties. Of course, this all assumes that Chaney proceeds with promptness (which is contrary to the record in this case).

An amended pleading is further necessitated by Chaney's overly-broad or "kitchen sink" request for attorneys' fees. Chaney's efforts to throw every attorney fee incurred against the proverbial wall troubles the Court, and

---

[18] W.PA.LBR 5005-13(b).

implicates Federal Rule of Civil Procedure 11 and Federal Rule of Bankruptcy Procedure 9011.

As discussed above, despite Chaney's overtures of having to engage in complicated financial analyses in advance of filing, the Motion for Sanctions seeks recovery of <u>all attorneys' fees</u> accumulated by Chaney in connection with the Bankruptcy Case, Adversary Proceeding, and subsequent appeals, regardless of whether each individual charge was incurred as the result of allegedly sanctionable conduct by Respondents. In fact, a cursory review of the invoices attached to the Motion reveals numerous fees related to unsanctionable conduct of the Respondents (e.g., the use of the bankruptcy process to obtain a discharge of non-Chaney related debts, the *bona fide* good faith argument that the debt to Chaney is dischargeable, discovery disputes related to the same in the Bankruptcy Case and Adversary Proceeding, and court proceedings concerning the disallowance of Attorney Yanny's *pro hac vice* admission which themselves were occasioned by Attorney Yanny's uncivil conduct).

For example, Chaney seeks reimbursement for the following:[19]

| Firm | Date | Description | Hours | Amount |
|------|------|-------------|-------|--------|
| Yanny & Smith ("Y&S) | 12/5/11 | "Download and review Grigg's bankruptcy filings" | 1.20 | $240.00 |
| Y&S | 8/8/12 | "Prepare apology letter to [C]arnevali" | .60 | $150.00 |

---

[19] Again, these are for illustration only and are a non-exhaustive list of charges which appear to be unrecoverable as sanctions.

| | | | | |
|---|---|---|---|---|
| Y&S | 8/8/12 | "Further work regarding letter to judge regarding pro-hac-vice matter" | 1.10 | $550.00 |
| Y&S | 2/1/13 | "attend sworn in Pittsburgh" | 8.00 | $4,000.00 |
| Y&S | 2/8/13 | "Work and review order striking appearance. Further legal research and review documents. Communicate with client. Legal research regarding Judge Deller's order striking admission." | 3.10 | $1,550.00 |
| Y&S | 2/11/13 | "Conference with KDA. Communicate with client. Review transcript of pro hac motion hearing. Review motion for reconsideration of order striking notice of appearance. Legal research." | 2.80 | $1,400.00 |
| Y&S | 5/22/13 | "Legal research regarding Bullock opinion. Communicate with client." | .80 | $400.00 |
| Y&S | 6/5/13 | Three entries entitled "Prepare Bullock brief" | 2.00 | $600.00 (Total) |
| Y&S | 6/7/13 | "Prepare Bullock [brief]" | 1.90 | $570.00 |
| Johnson Law, PLLC ("JLP") | 2/17/12 | "Travel to/from Johnstown; attend 341" | 7.50 | $1,875.00 |
| JLP | 2/17/12 | "lunch with Matt Yanni" and "parking fees" | | $23.67 |

See Mot. for Sanctions Ex. A, D.

Moreover, there is a glut of charges for which only a vague description is provided.  The inadequate descriptions impede the Court in its ability to make a determination of whether the charges were incurred as a result of allegedly

sanctionable conduct. Most prominently, the vast majority of the Yanni Law

Firm's invoice, attached to the Motion as Exhibit E, is devoid of such detail,

labeling events as "phone call" or "hearing" along with a time duration but

without reference to the subject addressed. For example:[20]

| Firm | Date | Description | Hours | Amount |
| --- | --- | --- | --- | --- |
| Yanni Law Firm ("Yanni") | 2/16/12 | "Reviewed Questions for Grigg" | 3.83333 | $766.67 |
| Yanni | 3/2/12 | "Hearing from 10:56 AM to 12:05 PM" | 1.15 | $230.00 |
| Yanni | 4/3/12 | "Phone Call from 12:40 PM to 12:45. . . ." | .083333 | $16.67 |
| Yanni | 7/31/12 | "Waited for Hearing from 9:51 AM . . . ." | 3.73333 | $746.67 |
| Yanni | 10/29/12 | "Reviewed Documents from 1:00 PM . . . ." | 3 | $600.00 |
| Yanni | 2/28/13 | "Conference with Todd Johnson" | .083333 | $16.67 |
| Yanni | 4/25/13 | "Hearing from 2:21 PM to 4:25 PM" | 2.06666 | $413.33 |
| Yanni | 12/16/13 | "Conference with Joe Yanny" | 2.66666 | $533.33 |
| Yanni | 12/19/13 | "Hearing from 2:30 PM to 3:30 PM | 1 | $200.00 |
| Yanni | 3/18/14 | "Reviewed File" | 1.5 | $300.00 |

See Mot. for Sanctions Ex. E.

Likewise, the invoices for Yanny & Smith and Johnson Law, PLLC are rife

with charges for which a portion and/or the total of the entry lacks sufficient

---

[20] And again, these are a non-exhaustive selection of fee entries which provide an inadequate description of the matters addressed relative thereto.

detail to determine on its face whether such action was incurred in connection

with allegedly sanctionable conduct:

| Firm | Date | Description | Hours | Amount |
|------|------|-------------|-------|--------|
| Y&S | 12/8/11 | "Work with local counsel in PA regarding bankruptcy matter; transmitted docs to local counsel" | 1.60 | $800.00 |
| Y&S | 1/4/12 | "Work with co-counsel in PA regarding bankruptcy; receipt & review Grigg's memorandum & Grigg's declaration; review schedule of debts" | 3.10 | $1,550.00 |
| Y&S | 1/10/12 | "teleconference with bankruptcy trustee in PA regarding bankruptcy matter." | 1.20 | $600.00 |
| Y&S | 2/10/12 | "Counsel conference with co-counsel in PA; further work regarding bankruptcy matters." | 1.10 | $550.00 |
| Y&S | 5/25/12 | "Receipt and review disk regarding Grigg's bankruptcy case from trustee and production document" | 1.20 | $600.00 |
| Y&S | 1/31/13 | "Prepare for and travel to PIT"[21] | 8.60 | $4,300.00 |
| Y&S | 2/12/13 | "Review documents regarding trustee's motion to employ Pongracz. Review objection to trustee's motion. Further review documents. Legal research." | 2.4 | $1,200.00 |

---

[21] As an example of the ambiguous nature of this charge, the invoice reflects that Attorney Yanny travelled to Pittsburgh to attend a swearing in ceremony held on February 1, 2013 as an end-run to this Court's denial of his *pro hac vice* admission. If the purpose of this travel was primarily to attend the swearing in ceremony, such fee would be unrecoverable as a sanction. The invoice also reflects that on February 2-3, 2013, Attorney Yanny prepared for a mediation which was attended by Attorney Todd Johnson of Johnson Law, PLLC in Pittsburgh on February 4, 2013. See Mot. for Sanctions Ex. A, D. However, Attorney Yanny did not charge for attending the mediation. See Motion for Sanctions Ex. A. Thus, further explanation is required to ascertain the true purpose of the travel expense and whether all, or a portion thereof, was incurred in response to sanctionable conduct.

| JLP | 1/6/12 | "Speak with Yanny firm re: Grigg" | 1.40 | $350.00 |
| JLP | 1/26/12 | "Speak with Yanny firm re: Grigg" | 1.20 | $300.00 |
| JLP | 2/15/12 | "Speak with Yanny firm and trustee re: Grigg; print and review docs" | 2.20 | $550.00 |
| JLP | 3/12/12 | "Leave message with WP"<br>"Speak with GH" | .10<br>.20 | $25.00<br>$50.00 |
| JLP | 5/16/12 | "Speak with Y&S and Poorman" | .70 | $175.00 |
| JLP | 6/25/12 | "Speak with JY" | .30 | $75.00 |
| JLP | 8/27/12 | "Speak with TG" | .40 | $100.00 |
| JLP | 1/20/13 | "Speak with JY and Chaney" | .40 | $100.00 |

<u>See</u> Mot. for Sanctions Ex. A, D.

While some or all of these fees may have very well been incurred in connection with alleged sanctionable conduct, such connection is neither apparent in the Motion nor on the face of the invoices; rather, the charges are tenuous at best without further explanation by Chaney. Absent an amended motion, the Court and the Respondents would shoulder the burden of sifting through the individual charges contained in the billing statements line-by-line, like a detective, matching vague descriptions to events on the docket, and making conjectures as to whether or not they are tied to alleged sanctionable conduct by Respondents.

As this Court has indicated to the parties in its prior decision dated November 6, 2013, "it is not the job of this Court to rummage through the files to discern counsel's argument or to lay record for a litigant." <u>Chaney v. Grigg (In re Grigg)</u>, Adv. No. 12-7008-JAD, 2013 WL 5945793, at *5 (Bankr. W.D. Pa.

Nov. 6, 2013), citing <u>Yeomalakis v. F.D.I.C.</u>, 562 F.3d 56 (1st Cir. 2009)("It is not our job, especially in a counseled civil case, to create arguments for someone who has not made them or to assemble them from assorted hints and references scattered throughout the brief."); <u>Campbell v. Hall</u>, 624 F.Supp.2d. 991, 1004 (N.D. Ind. 2009)("it is not [the Court's] job to do counsel's work of organizing or formulating a party's arguments"); and <u>In re Boone County Utilities, LLC</u>, 506 F.3d 541, 542 (7th Cir. 2007)("judges are not Sudoku masters ... who enjoy filling in a grid with few hints about where things go."))

Accordingly, if this matter were to proceed past the timeliness issue, an amended version of the Motion would be necessary. This effective "re-start" of the sanctions litigation would further delay adjudication of the Motion on the merits, and thus further remove the actions comprising the genesis of the Motion from the memories of the Court and the Respondents.  Thus, the inconvenience and burden to the Court and the Respondents caused by Chaney's dilatory conduct in filing the Motion, as well as Chaney's failure to conform to the applicable rules of pleading and overly-broad request for fees weigh in favor of a finding of untimeliness.  It also weighs in favor of denying the Motion in *toto* as the request by Chaney for sanctions is admittedly excessive on its face.

Finally, in his supplemental brief, Chaney avers that the public policy of not rewarding abusive litigation tactics weighs against a determination that the Motion for Sanctions is untimely.  While deterrence of abusive practices is of significant interest—so much so as to warrant the creation of 11 U.S.C.

§1927—there is also a strong public policy in promoting finality, preventing unreasonable delay in seeking redress, and conforming to applicable pleading standards. Thus, public policy is not vitiated by the denial of the Motion on the basis of timeliness.

### E.
### The Relevant Factors Weigh in Favor of a Finding of Untimeliness

In balancing the above factors, this Court finds that the circumstances surrounding the filing of the Motion for Sanctions weigh heavily in favor of a finding of untimeliness.  In arriving at this conclusion, the Court assigns significant weight to Chaney's failure to adequately justify the delay in filing the Motion for Sanctions which this Court finds particularly egregious given not only the lengthy delay in seeking case re-opening to pursue sanctions, but also the additional further delay in filing the Motion for Sanctions itself – which additional delay appears to have only been curtailed by the threat of re-closure in this Court's *sua sponte* December 28th Order.

In his supplemental brief, Chaney avers that an absence of prejudice should weigh heavily in supporting a finding of timeliness. Again, while the Court agrees that prejudice is a valid consideration, it is not the sole consideration.  Under the unique circumstances of this case, the Court finds that an absence of prejudice is outweighed by the interests of finality, prevention of unfair surprise, discouragement of "kitchen sink" fee requests, promotion of conformity to pleading requirements, and most importantly, deterring unreasonable delay in seeking relief.  For those reasons, the Motion for Sanctions is untimely.

## IV.

In his supplemental brief, Chaney argues that there is no time limit for filing motions under 28 U.S.C. §1927, as §1927 is expressly exempted from the time constraints of Federal Rule of Civil Procedure 54(d)(2), by Federal Rule of Civil Procedure 54(d)(2)(e). Instead, Chaney avers that the appropriate measurement of timeliness of a §1927 motion turns on the Supreme Court's holding in White v. New Hampshire Dep't of Employment Sec., 455 U.S. 445, 102 S. Ct. 1162, 71 L. Ed. 2d 325 (1982). Chaney appears to be arguing that in the absence of prejudice, White stands for the proposition that there is no deadline to submit fee requests to the Court.  Chaney, however, misconstrues White and its potential application to the case sub judice.

In White, the Supreme Court of the United States addressed the issue of whether a fee request made by a prevailing party pursuant to the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, was tantamount to a motion to alter or amend a judgment under Federal Rule of Civil Procedure 59(e) and would thereby be subject to the ten[22] day limitation to bringing a motion thereunder.  The Supreme Court declined to invoke Rule 59(e), noting that the application of Rule 59(e) in such scenario was neither "necessary [nor] desirable to promote finality, judicial economy, or fairness." White v. New Hampshire Dep't of Employment Sec. 455 U.S. at 452.  Instead, the Supreme Court observed that §1988 authorized fees to be awarded thereunder at the

---

[22] Subsequently amended to provide a twenty-eight day period to bring a motion to alter or amend. See Fed. R. Civ. P. 59(e).

discretion of the court and that in exercising such discretion, an adjudicating court could both deny fee requests which unfairly surprise or prejudice the affected parties and prevent piecemeal appeals by promptly resolving fee requests. Id. at 454. The Supreme Court further noted that district courts remained free to adopt local rules establishing standards for timeliness of claims for attorneys' fees. Id.  As such, a fair reading of the holding in White is that the determination of whether to grant or deny fee requests is left to the sound discretion of the trial court, and certainly prejudice and unfair surprise are relevant to the calculus.  Of course, here in this case between Respondents and Chaney, this Court has considered these two factors along with the other factors set forth above in finding that Chaney's Motion is untimely.

Furthermore, while Chaney is correct that the fourteen day limit for claiming attorneys' fees set forth in Rule 54(d)(2) does not apply to claims for attorneys' fees as sanctions under §1927, Chaney's assertion that there is no applicable time limit absent prejudice ignores the Third Circuit Court of Appeal's holding in In re Schaeffer Salt Recovery, Inc., supra, which was decided twenty-six years after White and which imposes the "reasonable time" standard discussed above.

However, even if Schaeffer had not established a timeliness requirement, the outcome of the timeliness analysis above would be unaltered by the application of White.

At the outset, this Court notes that it is unclear from Chaney's Supplemental Brief whether in citing to White Chaney advocates for this Court

43

to utilize a discretionary standard to assess timeliness or apply a more rigid "three-factor test".  Specifically, while Chaney states that <u>White</u> provides that the timeliness of a §1988 fee request is "a matter for the district court's discretion guided by certain enumerated considerations[,]" he also identifies the considerations of (1) unfair surprise, (2) prejudice to the nonmoving party, and (3) the policy of avoiding piecemeal appeals as comprising a "three-factor test" under <u>White</u>. Chaney's Suppl. Br. 2. Although it may appear that the Court is splitting hairs over the semantics of Chaney's position, the Court notes that word choice matters and that the phrase "three-factor test" suggests application of a more rigid standard limited only to the factors set forth therein.

To the extent that Chaney seeks to distill the considerations acknowledged in <u>White</u> into a "three-factor test", such attempt is unsupported by the text of the case. Although <u>White</u> identifies avoidance of piecemeal appeals and unfair surprise as "important concerns," nowhere in <u>White</u> does the Supreme Court identify the three factors proposed by Chaney as being dispositive of post-judgment fee requests. Instead, <u>White</u> emphasized the discretionary powers of the adjudicating court to evaluate individual cases. <u>White</u> at 452-45 (citation omitted) ("Section 1988 authorizes the award of attorney's fees 'in [the] discretion' of the court. We believe that this discretion will support a denial of fees in cases in which a postjudgment motion unfairly surprises or prejudices the affected party."); <u>see also</u> <u>Ruben v. Warren City Schools</u>, 825 F.2d 977, 981 (6th Cir. 1987) <u>cert. denied</u> 485 U.S. 934, 108 S.Ct. 1108 (1988) (observing that <u>White</u> grants district courts the discretion to

44

entertain post-judgment fee requests and that in exercising such discretion, the court "should consider unfair surprise or prejudice to the affected party and the policy of avoiding piecemeal appeals.")

It should also be emphasized that in declining to apply Rule 59(e) to fee requests, the Supreme Court noted the importance of the additional interests of promoting finality, judicial economy, and fairness. These additional interests, and perhaps more significantly the Supreme Court's deference to the discretionary powers of adjudicating courts, do not support the implementation of a rigid "three-factor test" which only considers unfair surprise, prejudice, and piecemeal appeals, to post-judgment fee requests. To the contrary, <u>White</u> supports application of a wide discretionary standard under which the Court may weigh all equitable considerations, including those discussed in this Memorandum Opinion.

At least one court interpreting <u>White</u>, <u>Hicks v. Southern Md. Health Sys. Agency</u>, 805 F.2d 1165 (4th Cir. 1986) supports this position, finding that <u>White</u> appears to stand for the proposition that in the absence of an established timeliness requirement, "the only time limitation arises out of those equitable considerations that a district judge may weigh in his discretion." <u>Id</u>. at 1167; <u>see also</u> <u>United States v. Eleven Vehicles, Their Equip. & Accessories</u>, 200 F.3d 203 (3d Cir. 2000)(citing <u>Hicks</u>)(with respect to a supplemental fee request under the Equal Access to Justice Act, "[i]n the absence of a timeliness requirement imposed by statutory command, a Federal Rule of Civil Procedure,

or an applicable local court rule, 'the only time limitation arises out of those equitable considerations that a district judge may weigh in his discretion.'")

In practical effect, this discretion to weigh equitable considerations is the same standard employed by this Court above in assessing what constitutes a "reasonable time" to prosecute a §1927 sanctions motion. Indeed, the above analysis by this Court considered a variety of equitable considerations, including prejudice, unfair surprise, and a litany of others (including the length of delay, the Movant's lack of an adequate explanation for the delay, the burden on the litigants and the Court, the failure of the Movant to adequately plead his case, and the interests of finality).

Finally, in Chaney's Supplemental Brief, the Movant tucks away in a footnote the proposition that Respondents "may have waived any objection based upon timeliness" by failing to advance said argument in response to the Motions to Reopen. See Chaney's Suppl. Br. 3, n.1. The Court notes that re-opening of the case was not a final determination of the underlying merits of the Motion.  In addition, the issue of timeliness was raised in the Respondents' responsive pleadings to the Motion for Sanctions and consequently the Court finds no merit to this argument.

## V.

Having found that the timing of the Motion for Sanctions falls outside of what is "reasonable," the Court shall enter an order that denies the Motion for Sanctions.  The Court however, stresses that the denial of the requested relief herein should in no way, shape, or form be interpreted as the Court approving

of or even condoning the actions taken by the Respondents throughout the litigation. In fact, this Court has repeatedly observed throughout these proceedings that Respondents' filings were numerous and that the Court had genuine concerns regarding Mr. Grigg's and Attorney Carnevali's repeated re-hashing of previously decided arguments. <u>See</u> Mem. Op. 10, n. 11, ECF No. 294. In this regard, at least some of the actions taken by Attorney Carnevali appear to have been, at worst, frivolous and unnecessarily contentious, and at best, contrary to Attorney Carnevali's affirmative duty to expedite litigation. See Pa. RPC 3.2.

Nonetheless, the holding herein solely reflects upon the timeliness of the Motion for Sanctions, without consideration of the merits of Chaney's arguments and/or this Court's observations of the Respondents' prior conduct in this case.  Accordingly, the Motion is denied.

## VI.

For the above reasons, this Court denies *Chaney's Motion for Sanctions.* An appropriate order shall be issued in accordance herewith.

Dated: June 19, 2017             /s/ Jeffery A. Deller
                                 **JEFFERY A. DELLER**
                                 Chief United States Bankruptcy Judge

**CASE ADMINISTRATOR TO MAIL TO:**
 Joseph A. Yanny, Esq.
 Matthew T. Yanni, Esq.
 Ronald P. Carnevali, Esq.
 Robert O. Lampl, Esq.
 Bethann R. Lloyd, Esq.
 Office of the United States Trustee

FILED
6/19/17 3:30 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA